P. L. McADOW, and wife, MRS. P. L. McADOW, on behalf of themselves and all others similarly situated, v. M. A. SMITH, as Successor to J. H. THERRELL, as Liquidator of the Trust Company of Florida, a corporation, as Trustee; *et al.*

172 So. 448

Opinion Filed February 2, 1937.

Casey & Walton and David B. Newsom, for Appellants; Austin Miller, for Appellees.

TERRELL, J.—In 1926, The Times Corporation issued serial coupon bonds in the sum of $390,000 bearing interest at eight per cent. and secured by a trust deed on the Park Lane Apartments in Jacksonville. The Trust Company of Florida was named as trustee. Coupons one, two, and

three were paid and the mortgagor defaulted. About two years after default, the trustee and the mortgagor entered into an extension agreement whereby interest for one year was waived, interest for two years was fixed at four per cent., and for the balance of the period, the bonds run at five and one-half per cent. Certain of the maturities were also waived.

The extension agreement was entered into only "insofar as it is authorized to do so under the terms of the said trust instrument or under the laws pertaining to trusts of the character created by said original trust deed." It also provided among other things that the original bonds should be delivered to the trustee in exchange for new bonds but that the original bonds should not be cancelled until the debt secured by the trust deed was paid in full. Holders of $361,000 of the bonds complied with the extension agreement but holders of $29,000 refused to comply. The trustee without the knowledge or consent of the consenting bondholders declined to pay interest to the nonconsenting holders.

The trustee went into the hands of the State Banking Department, the mortgagor again defaulted, and the State Liquidator for the State Banking Department, declared the extension agreement void, and brought suit to foreclose the original trust deed. The Appellants, representing $12,000 of the original and nonconsenting bondholders filed their petition for intervention which was denied. After the sale of the mortgaged property but before distribution of the proceeds, Appellants filed a second petition to intervene claiming a preference in distribution of the proceeds of the mortgage on the theory that the extension agreement amounted to a novation which put them in the position of a first mortgagee and the majority or consenting bond-

holders in the position of a second mortgagee. This question was submitted by consent of the parties (which was made a rule of Court) to a special master for determination, who found that the intervenors were not entitled to a preference in the payment of principal but that they were entitled to a preference in payment of an amount equal to the interest which had been received by the majority or consenting bondholders above that which had been received by the intervenors. Appellants excepted to the master's report and Appellees excepted to that portion of it allowing a preference in the payment of interest. The Chancellor overruled all exceptions and entered a final decree of distribution in accordance with the master's report. Both parties have appealed from the final decree.

To reverse the decree of the Chancellor, Appellants rely on novation, that is to say, they contend that when the extension agreement was executed and the new bonds issued, a new debt was substituted for the old one and this fact made them (Appellants) preferred creditors over the consenting bondholders who had accepted the new bonds. If defeated in this contention, they assert that the trustee and the consenting bondholders are guilty of constructive fraud, in that a collusive agreement was made between them and the Park Lane Corporation.

We have examined the record carefully and we find nothing to support the charge of constructive or other species of fraud. For all that is shown here, the extension agreement was entered into in good faith, it injured no one, it was regular in form and was of the kind frequently entered into at the time. It apparently had no purpose in view except to work out a plan under which the bonds could be paid and all holders salvage as much as they could from

the principal invested in them. No one was given an advantage over the other and all sacrificed alike.

This conclusion is supported by the fact that the controversy was submitted to a special master by agreement of the parties which agreement was made a rule of court. Fraud wherever charged must rest on facts and the master found that the record was without proof to support the charge and that the intervenors were entitled to no preference in payment of the principal. Being a rule of court, the master's finding could not be set aside at the bare discretion of the Court. It was entitled to the same weight as the verdict of a jury. Croom v. Ocala Plumbing and Electric Company, 62 Fla. 460, 57 Sou. 243.

On the question of novation, the law seems settled that where new bonds are exchanged for old ones under an agreement that the new bonds shall be subrogated to the rights of the old ones and be secured by the original mortgage, to the same extent as the original issue, and that the exchanged bonds are not to be cancelled but retained by the trustee, a novation does not occur and the new bonds are entitled to the lien of the mortgage securing the old ones. Quindry on Bonds and Bondholders, Volume I, page 463, Section (b). The extension agreement brought in question bore all these prerequisites.

We do not deem it necessary to discuss other assignments on direct appeal. On the cross appeal, it is contended that the chancellor erred in the basis of computation he instructed the master to employ in distributing the proceeds of the mortgage.

This assignment is well grounded. In determining the amount to which each bondholder is entitled in a distribution like this the computation is made on the face value of the bonds and on the basis of the entire amount, both prin-

cipal and interest, due the holder, without giving priority of principal over interest or interest over principal. Quindry on Bonds and Bondholders, Vol. 1, page 429, Section 327; Jones on Bonds and Bond Securities, Vol. 3, page 200, Section 1431.

We express no opinion as to the validity or effect of the extension agreement. Under the facts of·this case, it became immaterial. The proceeds of the mortgaged security were sufficient to pay only a slight percentage of the principal debt and so far as is shown, all bondholders will fare alike under the distribution to be made.

I am authorized to say that Mr. Justice WHITFIELD and Mr. Justice ELLIS agree to the opinion as written, while Mr. Justice BROWN, Mr. Justice BUFORD, and Mr. Justice DAVIS agree to the disposition of the direct appeal, but as to the cross appeal they think the judgment should also be affirmed.

It follows that the judgment below must be and is hereby affirmed as to the main appeal and as to the cross appeal, the court being equally divided the judgment below is also affirmed.

Affirmed.

ELLIS, C. J., and WHITFIELD, BROWN, BUFORD, and DAVIS, J. J., concur.