127 So.2d 481 (1961)
Mildred C. BERGH, Appellant,
v.
Marcus B. BERGH, Appellee.
No. C-198.
District Court of Appeal of Florida. First District.
March 7, 1961.
Rehearing Denied March 20, 1961.
*482 Scruby & Yonge, Orange Park, for appellant.
Reinstine, Reinstine & Panken, Jacksonville, for appellee.
WIGGINTON, Chief Judge.
Plaintiff wife has appealed from a final decree entered in a suit for divorce brought *483 against her husband. The decree, among other things, made a division of the property accumulated by the parties during their marriage. It is that part of the decree adjudging the interest of each party in the property accumulated during marriage, and making division thereof, which is assigned as error.
We are concerned with three separate parcels of real estate which for convenience will be described and referred to separately as the home, the clinic and the improved town property. The evidence reveals and the special master found that all of the funds used in the acquisition of the real estate and the construction of the improvements thereon was furnished by defendant husband out of his income as a practicing medical doctor.
The property consisting of the home was purchased as unimproved lots and title taken in the name of both husband and wife as an estate by the entirety. Thereafter the property was improved and the home occupied by the parties was constructed thereon. The cost of the land, the improvement thereof, and construction of the home exceeded $110,000.
The lot referred to as the improved town property was likewise purchased as vacant property and title taken in the name of the parties hereto as an estate by the entirety. There was constructed on this lot a dwelling at a cost of $13,000 which is producing a rental income of $100 a month.
In 1954 title to the two parcels of property described above was conveyed to the plaintiff wife and title has at all times since remained vested in her alone. By her complaint the wife claimed the foregoing properties as her separate estate. By his answer the husband alleged that title to both parcels was conveyed to the wife with the understanding that it was to be held by her in trust for the benefit of both parties. The only explanation of the reason why this conveyance was made is the testimony of the wife given before the special master in which she said that title was conveyed to her for the security of herself and the children at a time when her husband was being sued by another party. She admitted that no discussion took place at that time or any time thereafter as to whether the conveyance was intended as a gift.
The third parcel of property with which we are concerned is that described as the clinic which consists of two adjacent lots located in the town of Orange Park. This property was unimproved at the time it was purchased and title thereto taken in the name of both husband and wife as an estate by the entirety. Thereafter the husband constructed on this property a medical clinic used by him in the practice of his profession at a cost of $43,000. Title to this property has at all times remained in the parties as an estate by the entirety and is subject to an outstanding mortgage in excess of $3,000.
In his report and recommendations the special master found from the testimony above mentioned that the conveyances of the home and the improved town property to the wife in 1954 must, under the applicable principles of law, be presumed to be a gift since the record is devoid of any conclusive evidence to the contrary. He recommended that this be adjudged the separate property of the wife. He further recommended that the final decree declare both husband and wife to be tenants in common of the property consisting of the medical clinic and each party be enjoined from selling, conveying or in any manner encumbering his or her undivided one-half interest in the property until further order of the court. Exceptions to the foregoing recommendations of the special master were filed by defendant husband and considered by the court on final hearing.
The final decree confirmed the special master's report and recommendations in all respects except as to that part thereof dealing with the rights of the respective parties in the three parcels of property mentioned herein. The decree granted the wife an absolute divorce, together with the *484 custody of the minor children born of the marriage. It awarded the wife $1,000 a month as alimony and support for the children, and also awarded court costs and attorney's fees.
With respect to the home and the improved town property the final decree recites that the special master's findings to the effect that the conveyances of these properties to the wife carry with them the well-recognized principle of "presumption of gift" is a correct statement of the law. The chancellor found, however, that based on the surrounding facts and circumstances under which the conveyances were made as reflected by the testimony of the wife, the presumption fails and is untenable. The chancellor found that the wife's testimony, without more, is wholly sufficient to overcome the presumption of gift. The effect of the court's ruling in this regard was to sustain the husband's exception to the special master's report as it relates to the interest of the respective parties in the home and improved town property, and in effect adjudges that the husband and wife have an equal joint interest in these two parcels of property even though record legal title is vested in the wife under the conveyances previously made to her.
The second phase of the final decree purports to effect a partition of the three parcels of property between the husband and wife. It decrees that the sole and exclusive title to the home and improved town property is confirmed in the wife, but orders the wife to execute and deliver to the husband a deed conveying to him her interest in the two lots on which the clinic is located, title to which at all times has been vested in both parties as an estate by the entirety.
On this appeal appellant wife makes two contentions. She first urges that the court erred in sustaining the husband's exception to that part of the special master's report and recommendation which held that the wife was possessed of fee simple title to the home and improved town property, which parcels should be decreed to be her separate estate in which the husband owns no interest. Secondly she asserts that the chancellor erred in requiring her to convey to her husband the interest which she holds as an estate by the entirety in the property on which the clinic is located. We shall discuss these two contentions in the order stated.
The evidence is uncontradicted that title to the property consisting of the home and the improved town property was originally taken in both the husband and wife as an estate by the entirety. Long prior to the institution of this action the husband and wife joined in a deed conveying to the wife title to the above mentioned parcels of land. The only evidence in the record relating to this transaction is that adduced by the wife by which she testified that the property was conveyed to her for the security of herself and the children at a time when her husband was being sued by another party. No discussion took place at that time nor at any time thereafter, as to whether this conveyance was intended as a gift. The master's interpretation of the above mentioned testimony is that under well-established rules of law prevailing in this state the presumption arises that the wife took the beneficial, as well as the legal, title to the property described in the deeds, and that by placing title in her name the husband intended the conveyance as a gift. Such presumption is accompanied by the corollary presumption that no trust was intended and that this latter presumption may be rebutted only by evidence which is so clear, strong and unequivocal as to remove every reasonable doubt as to the existence of the trust.[1]
By his decree the chancellor disagreed with the special master's interpretation that the wife's testimony above mentioned clothed the conveyance with the presumption of gift. The chancellor's interpretation of the evidence was that no gift was intended, but the title to the mentioned *485 properties was placed in the wife by the husband as an expedient at a time when he was engaged in litigation, apparently upon the assumption that such was necessary in order to place the property beyond the reach of any judgment creditor in the event he was unsuccessful in the litigation in which he was then involved. It was the chancellor's interpretation of the evidence that title to the property was intended to be held by the wife in trust for the benefit of both her and the husband. The effect of the chancellor's holding is that the parties have a joint and equal interest in both the home and the improved town property to the same extent as if title had remained in them as an estate by the entirety and the subsequent conveyances by the husband had never been made. The problem with which we are confronted is the question of whether the chancellor exceeded his authority in disagreeing with the interpretation placed by the special master on the uncontradicted evidence, and in reaching a contrary conclusion based upon his interpretation which in the exercise of his discretion appeared to him to be equitable and just.
It is appellant's position that under the rule of law announced by the Supreme Court in the Harmon case[2] the chancellor may override or modify the findings of its master in any manner consistent with the justice of the case, but he may not do this except for good cause, the term "good cause" being interpreted to mean a showing that the finding of fact by the master was clearly erroneous. In the Harmon case the Supreme Court said: "In fine, we have the view that where, as in this case, a competent master is selected by the chancellor and attentively conducts the hearings, thoroughly digests the testimony of the witnesses, and arrives at conclusions which are logical and well supported, his findings, although advisory, should not be set aside arbitrarily or capriciously, nor should they be disregarded or overruled by the chancellor simply because of an opinion of the chancellor at variance with that of the master."
The rule in Harmon has been consistently adhered to by the appellate courts of this state since the date of its pronouncement. We construe the rule to mean that the special master's findings of fact based upon the evidence adduced before him by the parties should not be set aside by the chancellor unless shown to be clearly erroneous. If the special master's findings of fact are supported by competent substantial evidence, they should be sustained. This is so for the reason that it is he who has had the advantage of listening to the witnesses testify, of observing their demeanor and attitude while testifying and because of this is in a better position to judge the credibility of the witnesses, evaluate the testimony and reach a correct conclusion as to the material facts on which the decision must turn. In the case which we now review there is no dispute as to the material facts, so the rule in Harmon which makes inviolate the special master's findings of fact when based upon substantial competent evidence is not involved in our consideration of this appeal.
We are primarily concerned with whether the rule in Harmon, as reiterated and paraphrased in subsequent decisions of the Supreme Court, renders the chancellor impotent to place upon the facts as established by the special master's findings an interpretation at variance from that reached by the master, and to apply to that interpretation such equitable principles and considerations as in the chancellor's opinion more nearly reach a just and equitable result.
The combined past experience of the members of this court in the active practice of law in Florida justifies it in taking judicial notice of that which every member of the Bench and Bar knows. We judicially know that the necessity for a chancellor to appoint special masters in *486 chancery cases often arises because of the inability of the chancellor to promptly hear the testimony and at the same time meet other important court commitments. We likewise judicially know that many special masters, as the one who was appointed and served in the case we now review, are competent and experienced attorneys at the bar whose knowledge of the law is extensive and whose judgment is sound. In many instances, however, members of the bar are appointed to serve in this capacity whose temperament, inexperience and lack of sound judgment seriously handicap them in properly interpreting the facts, balancing the equities and arriving at sound conclusions in accordance with a proper concept of justice. We do not construe the rule in Harmon to mean that even though the conclusions of law reached by a special master upon the facts established by the evidence may find support in accepted equitable principles, that such conclusions are binding upon the chancellor when under a different interpretation of the facts the chancellor may reach a contrary conclusion supported by established principles of law which in the exercise of his judicial discretion produces a more equitable solution to the issues posed for decision. The chancellor is an elected constitutional officer to whom the citizens of his circuit look, and upon whom they depend, for the settlement of their disputes. His training in and dedication to the law, and his experience in settling the rights of parties in a fair and impartial manner consistent with justice, far better qualify him to perform important judicial functions than does the training and experience of the average special master. It is the chancellor's decree which must be entered in the case and for which he is wholly responsible and accountable to those affected thereby. By his oath of office he is bound to see that the decree he enters in a cause approaches as closely as possible his conception of what is right and just under law. His judgment and discretion in this regard cannot be circumscribed nor restrained by the conceptions or legal conclusions of his statutory agent, the special master. As said by the Supreme Court in United States Casualty Company[3], "The chancellor, of course, should give due consideration to the findings of facts made by a special master and should consider the many advantages which the master had in personally hearing and observing the witnesses * * However, although the Chancellor may use the services of a special master (he is not required to do so) and receive from him his advisory findings and recommendations, the fact remains that it is the chancellor who under the law is charged with the duty and responsibility of making findings of facts and entering the final decree. He may, if he deems it necessary, conduct a hearing de novo * * *. It is the Chancellor's decree * * * [It] becomes final by lapse of time, absent an appeal or request for review."
It is patent from the decree appealed that the chancellor placed that interpretation upon the undisputed facts as found by the special master which, in the exercise of his sound judicial discretion, he deems more nearly conforms to established principles of law and the justice of the cause. In so doing he decreed that the husband and wife hold and own an equal interest in all the real property accumulated by them during their marriage consisting of the home, the improved town property and the clinic. We hold that the chancellor did not exceed his lawful jurisdiction in reaching this conclusion, and his right to do so is not precluded by the rule in Harmon.
Appellant's second point on appeal challenges that part of the final decree which orders the wife to convey to the husband her interest in the property on which the clinic is located and to which title is vested in both the husband and wife as an estate by the entirety. As stated above, after *487 decreeing that the parties own a joint and equal interest in the home and the improved town property, the chancellor confirmed in the wife sole and exclusive title to those parcels of land, thereby extinguishing the interest which the court had found the husband owned in those properties. The final decree also settled the interest which the respective parties own as an estate by the entirety in the land on which the clinic is located by ordering the wife to execute and deliver to the husband a deed conveying to him her interest therein. The action of the chancellor in entering what in legal effect amounts to a decree of partition of the three parcels of land in which the parties were jointly interested was clearly erroneous and must be reversed.
In the absence of special equities, an estate by the entireties held by a husband and wife in property acquired by them during marriage is automatically converted into a tenancy in common upon the entry of a decree of divorce.[4] As a general rule, in the absence of an agreement of the parties or appropriate pleadings praying for partition of jointly owned property upon the entry of a decree of divorce, a chancellor has no authority either to partition jointly owned property or effect what might amount to a property settlement between the parties nor dispose of property belonging to them as an incident to the divorce. After the proportionate share of each party has been fixed in jointly owned property and the marriage dissolved, it is then up to the parties themselves to determine whether their property should be partitioned or disposed of in some other manner.[5] In the absence of special circumstances a chancellor is without authority to order that one of the parties transfer his or her property interest to the other.[6]
It is to be noted that in the case we now review there was no voluntary agreement entered into between the parties with respect to a settlement of the interest which they owned in properties accumulated during their marriage. The pleadings are devoid of any prayer seeking partition of their interest in jointly owned property upon the entry of a divorce decree. Although under proper circumstances a chancellor may order the sale of jointly owned property for the purpose of making a lump sum settlement as alimony to the wife, or to charge the husband's share of the sale proceeds with support requirements for the wife or minor children[7] such circumstances are not present in this case. No doubt the chancellor concluded that it was to the best interest of the parties that he settle their property rights in the three parcels of land under consideration, and that in doing so, he effected what appeared to him to be a just and equitable settlement. If he were authorized by law to accomplish that purpose under the issues and circumstances present in this case, we would readily agree that the forced settlement decreed by him was reasonable and equitable in all respects. It is our view, however, that under established principles of law prevailing in this state, the chancellor lacked the power to dispose of the parties' interest in the property under consideration in the manner attempted.[8]
For the foregoing reasons the decree appealed is reversed and the cause remanded for the entry of an appropriate decree in accordance with the views expressed herein. Upon remand the chancellor will not be precluded, if he is so advised, from reconsidering that part of the final decree fixing the amount of alimony and support money to be paid by appellee to appellant in *488 light of the interest which each party will continue to hold as tenants in common in the property jointly accumulated during their marriage. Upon such reconsideration the chancellor may fix the husband's alimony and support money obligations in such amount as under the evidence in this case may seem equitable and just.
Affirmed in part, reversed in part.
CARROLL, Donald K., J., concurs.
STURGIS, J., specially concurs in part and dissents in part.
STURGIS, Judge (specially concurring in part and dissenting in part).
I disagree with the holding of the majority that the chancellor was not in error in overruling the master's conclusion that the husband made a gift to his wife of the real property conveyed to her in 1954. In the light of that holding, however, I am fully in accord with the directive remanding the cause with authority in the chancellor to re-evaluate the equities, thus affording an opportunity to modify the amounts allowable for alimony and support money. This is proper because it is evident that in entering the decree appealed those allowances were fixed on the assumption that the real property was subject to disposition in the manner provided by the decree.
The master herein was appointed by agreement of the parties. He was charged with the duty of taking the testimony and making recommendations of law and fact. All of the testimony was presented before him. The pertinent evidence regarding the conveyance from the husband to the wife is contained in the following excerpt from the testimony of the wife:
"Q. Were there any particular circumstances that promoted the transfer of that property  those two properties to your name? A. Yes.
"Q. Would you relate what the circumstances were? A. He did it for the security of the children and I, he was being sued and it was done for that reason.
"Q. Dr. Bergh was engaged in some litigation and at that time he transferred the title of both those properties to your name separately. A. Yes, that is right.
"Q. Was there any discussion between you and Dr. Bergh as to whether this property was a gift to you or not? A. No."
I cannot agree that this testimony, standing alone as it does, compels or fairly permits the conclusion that the husband did not intend to make a gift of his interest in the property to his wife. For aught that appears to the contrary, any purpose of the husband to secrete the property from levy in satisfaction of a prospective judgment against him was secondary to the security of the children and wife. The conveyance implies a gift and the husband, who testified at length, does not qualify or contradict the strong presumption that it was a gift. The wife's explanation that the property was conveyed to her "for the security of the children and I" negatives the notion that it was made for the security of or that it contemplated any interest reserved in the husband. I cannot imagine him testifying contrariwise had a judgment creditor attempted to subject the property to the judgment. The master as trier of the facts found that it was a gift and the chancellor was not authorized to disturb it.
I am unwilling to refine the rule in Harmon v. Harmon, Fla. 1949, 40 So.2d 209, to the point expressed by the majority, and I do not agree with some of the reasoning employed in support of that result. To so extend the rule in Harmon has the effect, in my opinion, of destroying its efficiency.
*489 The only basis at any time for the appointment of a special master is the inability of the chancellor to efficiently handle the matter referred or, as in this case, the convenience of parties agreeing to the reference. While I have no doubt as to the professional ability of the special master herein, I am not personally acquainted with it and therefore am not qualified to pass on that subject. According to my notion, the office of the special master, within the sphere of the powers delegated to him and under long recognized and venerated chancery practice, is no less important and authoritative than that of the chancellor; and this I think is the basis for the rule in Harmon. I therefore demur to the observation of the majority concerning the inexperience and implied incompetency of masters in some instances. The generalization is too broad. The majority's observations in that regard are equally applicable to some judges of great experience and to every judge with little experience.
I think the rule in Harmon clearly applies to this case. It has been consistently followed in a plethora of decisions of our Supreme Court and District Courts of Appeal. See Sconyer v. Scheper, Fla.App. 1960, 119 So.2d 408; Dade County v. Trombly, Fla. App. 1958, 102 So.2d 394; Donahue v. Davis, Fla. 1953, 68 So.2d 163, 172; Martin v. Martin, Fla. 1953, 66 So.2d 268; Carretta v. Carretta, Fla. 1952, 58 So.2d 439; Thompson v. Field, Fla. 1951, 54 So.2d 520, 521; Johnston v. Johnston, Fla. 1950, 48 So.2d 926; Rubenstein v. Rubenstein, Fla. 1950, 46 So.2d 602; Pawley v. Pawley, Fla. 1950, 46 So.2d 464, 28 A.L.R.2d 1358; Hall v. Hall, Fla. 1950, 46 So.2d 449; City of Miami Beach v. First Trust Co., Fla. 1949, 45 So.2d 681, 683.
The opinion in Harmon was written by Mr. Justice Thomas. Interestingly, in Florida Nat. Bank & Trust Co. of Miami v. Brown, Fla. 1950, 47 So.2d 748, 755, Justice Hobson first wrote a dissent citing Croom v. Ocala Plumbing & Electric Co., 62 Fla. 460, 57 So. 243, McAdow v. Smith, 127 Fla. 29, 172 So. 448, 449, Empire Lumber Co. v. Morris, 102 Fla. 226, 135 So. 508, and Kooman Florida Chancery Pleading and Practice, pg. 304, in support of the rule that "Where parties consent to reference to master for determination and such reference is entered, as a rule of court," as was done in the case now on review, "findings of master cannot be set aside at bare discretion of court and are entitled to same weight as the verdict of a jury." He said:
"I accept these authorities and suggest the case of Harmon v. Harmon, Fla., 40 So.2d 209, as additional authority in support of appellant's contention that a master's report is not to be arbitrarily disregarded."
On rehearing in the Brown case, Justice Hobson's view was adopted by the majority and he wrote the controlling opinion. The majority in the case now on review seeks to escape from the rule in Harmon by reason of the language employed by Mr. Justice Hobson when speaking for the majority in the subsequent case of U.S. Casualty Co. v. Maryland Casualty Co., Fla. 1951, 55 So.2d 741, 744. A careful analysis of that case reveals, however, that in discussing the weight and finality of findings of fact made by a deputy commissioner in workmen's compensation cases, Justice Hobson pointedly observed that "There is a difference under existing law between the position of a deputy commissioner and the full Commission, and those of a special master and a chancellor," and then went on to say:
"The chancellor, of course, should give due consideration to the findings of facts made by a special master and should consider the many advantages which the master had in personally hearing and observing the witnesses. Harmon v. Harmon, Fla., 40 So.2d 209. However, although the Chancellor may *490 use the services of a special master (he is not required to do so) and receive from him his advisory findings and recommendations, the fact remains that it is the Chancellor who under the law is charged with the duty and responsibility of making findings of facts and entering the final decree."
He stated the procedure that the chancellor may follow when not satisfied with the master's findings of fact: "He may, if he deems it necessary, conduct a hearing de novo * * *". This was not done in the case on review.
For the reasons stated, I concur in part and dissent in part as indicated.
NOTES
[1] 17 Fla.Jur., Husband and wife, §§ 43 and 44.
[2] Harmon v. Harmon, Fla. 1949, 40 So.2d 209, 213.
[3] United States Casualty Company v. Maryland Casualty Company, Fla. 1951, 55 So.2d 741, 744.
[4] F.S. Sec. 689.15, F.S.A.; Latta v. Latta, Fla.App. 1960, 121 So.2d 42.
[5] Banfi v. Banfi, Fla.App. 1960, 123 So.2d 52.
[6] Brown v. Brown, Fla.App. 1960, 123 So.2d 298.
[7] Bell v. Bell, Fla.App. 1959, 112 So.2d 63; Reid v. Reid, Fla. 1954, 68 So.2d 821.
[8] Boles v. Boles, Fla. 1952, 59 So.2d 871; Valentine v. Valentine, Fla. 1950, 45 So.2d 885.