200 So.2d 606 (1967)
Mae Catherine McANESPIE, Appellant,
v.
Robert Kelly McANESPIE, Appellee.
No. 7491.
District Court of Appeal of Florida. Second District.
June 21, 1967.
*607 John S. Matthews, of Macfarlane, Ferguson, Allison & Kelly, Tampa, for appellant.
William W. White, Jr., of Thompson & White, Tampa, for appellee.
PIERCE, Judge.
This appeal is from a final decree entered by the Circuit Court for Hillsborough County in a divorce case, wherein the Chancellor, contrary to the findings and recommendations of the Special Master, awarded permanent custody of two small minor children to the father.
Appellee husband filed complaint for divorce against appellant wife on the grounds of adultery and extreme cruelty and also sought custody of the two minor children of the parties, Nancy Ann, aged 8 years, and Terry Robert, aged 6 years, upon allegations that the wife was an unfit person to have their custody. The wife by answer denied such charges, and by counterclaim asked for divorce on the grounds of extreme cruelty and adultery, which latter allegations were denied by the husband.
Thereafter, over four hundred pages of sworn testimony was taken personally before the Special Master mutually chosen by the parties, consuming some three days, together with two hundred and thirty-two pages of testimony taken by depositions from five witnesses, four of whom, however, were among those testifying personally before the Master.
Thereafter, the Special Master, in an exhaustive Report to the Court, comprising eighteen pages, analyzed in great detail the testimony, pro and con, of and for the parties, upon all the issues in the case. The findings were: (1) that the wife was guilty of adultery and extreme cruelty toward the husband; (2) that the evidence of extreme cruelty of the husband, while not denied by him, was not corroborated by other evidence, and therefore was not sufficient to establish the wife's counterclaim; and (3) that the defendant had been "a good mother" and the welfare of the children "would be best served by granting their custody" to her. Conclusions of law and recommendations to the Court in accordance with such findings were included in the Master's report.
The plaintiff husband filed his "Opposition to the Report and Findings of Special Master Regarding Custody", taking issue with the findings and recommendations of the Special Master in such regard. Upon final hearing, the Chancellor entered his Final Decree, approving the recommendations of the Master in all particulars except that of custody of the children, as to which the "Opposition to the Report" was "sustained". The Decree thereupon granted plaintiff husband both a divorce and permanent custody of the minor children.
Defendant wife has appealed said Final Decree to this Court, assigning as error and arguing here only the issue of custody of the minor children. It is contended that the Chancellor erroneously substituted his own findings as to the fitness of the mother and the correlating welfare of the children for those of the Special Master. This brings into direct focus the always vexatious question as to the line of demarcation between, on the one hand, the weight to be accorded the findings of a Special Master upon adversary sworn testimony of witnesses taken personally before him, and, on the other hand, the authority of the Chancellor to in effect reverse such findings upon the sole basis of the cold printed pages of the record.
The guidelines for review by a Chancellor of the findings made by a mutuallychosen Special Master have been substantially laid down by the appellate Courts of Florida in numerous cases.
Such findings are to be accorded the same weight as the verdict of a jury in a common-law action. Croom v. Ocala Plumbing & Electric Company, 1911, 62 Fla. 460, 57 So. 243; Kent v. Knowles, 1931, *608 101 Fla. 1375, 133 So. 315; McAdow v. Smith, 1937, 127 Fla. 29, 172 So. 448; Florida Nat. Bank & Trust Co. of Miami v. Brown, Fla. 1950, 47 So.2d 748; Dade County v. Trombly, Fla.App. 1958, 102 So.2d 394. A Master's findings should not be disregarded "unless clearly wrong". Parker v. Interstate Trust & Banking Co., CCA Fla. 1932, 56 F.2d 792; Spencer v. Young, Fla. 1953, 63 So.2d 334; Moncrief v. Hall, Fla. 1953, 63 So.2d 640; Slatcoff v. Dezen, Fla. 1954, 74 So.2d 59; Ozgowicz v. Leighton, Fla.App. 1963, 151 So.2d 21; Applefield v. Commercial Standard Ins. Co., Fla.App. 1965, 176 So.2d 366; Gulf Coast Docks, Inc. v. Simon, Fla.App. 1960, 122 So.2d 414. When "the parties consent to the reference of a case to a master * * * to hear and decide all the issues therein" the Supreme Court has declared it to be "a submission of the controversy to a special tribunal, selected by the parties, to be governed in its conduct by the ordinary rules applicable to the administration of justice in tribunals established by law". Croom v. Ocala Plumbing & Electric Company, supra.
The foregoing rules have been held to be fully applicable to a divorce case, where the State in effect is always a party. Harmon v. Harmon, Fla. 1949, 40 So.2d 209; Lyon v. Lyon, Fla. 1951, 54 So.2d 679; Bergh v. Bergh, Fla.App. 1961, 127 So.2d 481; Petersen v. Petersen, Fla.App. 1964, 166 So.2d 631; Frank v. Frank, Fla. 1954, 75 So.2d 282.
In Harmon, the Supreme Court held as follows:
"While it cannot be questioned that in a case where the chancellor has appointed a master and empowered him to make findings he may override or modify them in any manner consistent with the justice of the case, he may not do this except for good cause. We interpret `good cause' to mean a showing that the findings of fact by the master were clearly erroneous.

"From our study of the subject it seems to us logical, if the master has heard all the testimony, that an exceptant to his findings undertakes the burden of showing that the master has clearly made a mistake  in other words, the same burden as an appellant who challenges in this court the conclusions of fact reached by a chancellor who has heard the witnesses.

* * * * * *
"In fine, we have the view that where, as in this case, a competent master is selected by the chancellor and attentively conducts the hearings, thoroughly digests the testimony of the witnesses, and arrives at conclusions which are logical and well supported, his findings, although advisory, should not be set aside arbitrarily or capriciously (of which there is no claim in this case) nor should they be disregarded or overruled by the chancellor simply because of an opinion of the chancellor at variance with that of the master. As we have said, the master was acting as an accredited agent of the chancellor and was at the time performing a service which would have been performed by the chancellor himself but for the appointment. Having seen and heard the witnesses, he had a definite advantage over the chancellor, who reviewed the case from a typewritten record." (Emphasis supplied)
In Petersen, this Court held the case to be controlled by Harmon, and in doing so construed the Supreme Court's holding in Harmon as follows:
"In Harmon v. Harmon, Fla. 1949, 40 So.2d 209, our Supreme Court held that presumptions favoring correctness of rulings of chancellor based largely or solely on questions of fact did not apply where all the testimony was actually heard by the master selected by the chancellor and none of its was heard by the chancellor; that reports of master to whom matters are submitted by agreements of the party have the weight of the verdict of the jury; and that where the chancellor has appointed a master and empowered *609 him to make findings on testimony, he may override or modify them in any manner consistent with justice, but he may not do so except for a `good cause,' which means a showing that the findings of fact by the master are clearly erroneous."
In the case sub judice the Chancellor was apparently beset very strongly with the feeling that the wife, because of her adulterous behavior and conduct, in and of itself, was not a fit and proper person to have the custody of her children. But, as a matter of law, such conclusion does not necessarily follow such premise.
The general rule is stated in Am.Jur., Vol. 17-A, Sec. 820, Divorce and Separation, as follows:
"The fact that a mother is guilty of adultery does not necessarily disqualify her to have the custody of her children. Although she may have been a bad wife, she may be a good mother. The moral unfitness of a mother must be such as has a direct bearing on the welfare of the child, if it is to deprive her of the custody of the child.
* * * * * *
"Although it is said in some other cases, that, other considerations being equal, it is usual to award the custody of the children to the innocent spouse, a survey of the results of a large number of cases reveals that this is not the practice in the majority of the states. Even though a father obtains a divorce, the preference of the mother as the custodian of a child of tender years persists where her fault does not reflect upon her present fitness to raise the child. Notwithstanding the conduct of the mother, the welfare of the child may be best served by awarding it to her; and this welfare can be determined to some extent by the comparative acts of the father and mother, showing love and affection for it and a parental interest in its welfare."
The Courts of this State seem to follow the foregoing rule. The Supreme Court, speaking through the beloved Justice Terrell, in Widett v. Widett, Fla. 1956, 88 So.2d 769, affirmed a final decree which granted the husband a divorce because of the wife's adultery and extreme cruelty but awarded her custody of their six year old daughter. The Chancellor in that case made findings in his decree, which findings were quoted in full, and upheld, by the Supreme Court, as follows:
"The proof is clear that she committed adultery not only with one man, but with several others at various times and places. Her conduct, without attempting to recite it here, evidences that she was wholly without any good faith in resuming the marital relations with her husband. She has intentionally failed to treat him with conjugal kindness, since they resumed marital relations.
"Upon the proof, she is guilty of adultery, which has not been condoned. She is also guilty of extreme cruelty. She is entitled to no alimony.
"No useful purpose would be served in reciting the evidence upon which the court bases the conclusion that she is quite unfit to have the custody of the child. This is disclosed by the record.
"The father is a fit person to have custody. But regardless of that, the father has no home in which to raise this girl, except with hired help in complete charge during his many absences.
"One must hope that the mother will change her ways upon the entry of this decree and that she will provide the care, affection and wholesame atmosphere that this girl is entitled to in her childhood days. Reluctantly, the Court determines that the welfare of the child requires her present custody with her mother."
This 2nd District Court in Bennett v. Bennett, Fla.App. 1962, 146 So.2d 588, said:
"Adultery or marital misconduct in and of itself does not necessarily demonstrate *610 that a parent is unfit to have custody of the children."
And 10 Fla.Jur., Sec. 256, Divorce, makes the following observation:
"Apparently the mere fact that a wife is guilty of adultery does not of itself prove that she is unfit to have custody".
This Court has consistently held to the rule that the conduct of the wife as respects grounds for divorce in favor of her husband is not necessarily the criterion to be followed in determining her fitness as a mother to have custody of her children. Slimer v. Slimer, Fla.App. 1959, 112 So.2d 581; Bargeon v. Bargeon, Fla.App. 1963, 153 So.2d 10; Julian v. Julian, Fla.App. 1966, 188 So.2d 896.
In Bargeon, the husband was granted a divorce on the ground of adultery, but this Court, speaking through Associate Judge Harry N. Sandler, held that the wife was nevertheless entitled to custody of the minor child of the parties.
In Slimer, this Court upheld a decree awarding a divorce to the husband and also held that upon the record the wife should have custody of the children.
In Julian, this Court reviewed the cases which draw a sharp line of demarcation between grounds for divorce in favor of the husband and misconduct of the wife depriving her of custody of her children. The cases there assembled are apposite to the instant case.
It all goes back to the simple application of the cardinal rule of child custody law, which is that a "[c]hild's welfare is of paramount consideration in determining question of custody after divorce of child's parents". And the corollary of that postulate is that a "[w]ife who is found to be a fit and proper person to rear children of tender years should be awarded custody * * * even where husband is granted a divorce". See 5th and 6th headnotes in Julian.
Reverting back to the case sub judice, the record shows that the Special Master in his eighteen page Report, after finding the wife guilty of adultery and extreme cruelty, discussed the evidence and made findings on the issue of custody of the children, as follows:
"A substantial amount of testimony was taken on the important subject of the custody of the children in this case. Considering the tender years of the children, that one is a boy, the other a girl, and all of the facts of the case pertaining to custody of the children, the special master concludes that at this time, the custody should remain with the defendant-wife. The welfare of the children is the principal deciding factor in determining the ultimate custody of the children. Apart from the improper associations of the wife, the preponderance of evidence shows that the defendant has been a good mother: the children have done well in school, have been kept neat and healthy. Dr. Adler, Pediatrician, (Tr. 295) objectively observed that he felt she had been a very good mother, although he admitted on hypothetical questioning, predicated on the existence of the improper marital affairs of the wife developed in the case, that it was not a good atmosphere in which to bring up children. (Tr. 304). The defendant's cousin, Mrs. Wisner, who was closely familiar with the home life of the family, testified that the defendant was a loving mother (Tr. 211) and that she cared for the children nicely. On his deposition (`C' page 44) the husband stated that if he got custody of the children, his 62 year old mother `would have the children' and that some day he planned to get married again, to a `decent person'. From the whole record, notwithstanding the improper acts of the wife, the special master concludes that the welfare of the children at this time would be best served by granting their custody to the defendant-wife which could be modified if the circumstances of *611 the children and future conduct on the part of the defendant should require it."
In his "CONCLUSIONS", the Special Master on the custody question stated:
"That notwithstanding the past misconduct of the defendant, as reflected in the record, at this time the custody of said minor children should be granted to the mother as the most suitable person under all the circumstances of the case, with reasonable visitation rights accorded to the plaintiff to visit said children and have said children visit with him."
The Chancellor in his Final Decree rejected the findings of the Master on the issue of custody, and in effect substituted his own findings in the following language:
"The Court finds that the defendant is not a fit and proper person to have custody of the aforesaid minor children. Although the Special Master made no specific finding at all in this regard, any inferential or implied finding to the contrary is expressly rejected as being unsupported by any substantial testimony, whatsoever."
This Court itself has examined the several volumes of evidence contained in the record here, reflecting on the fitness of the mother to have custody of the children, and in our opinion such evidence is both substantial and competent to support the Master's findings.
The Chancellor stated that the Master's Report "contains excellent and extensive recitation of the history of the cause, but contains no specific findings of fact" and that the Master "specifically bases his conclusions as to custody herein upon `the whole record' of this cause." Our understanding is that the Master in any case should and must base his conclusions upon "the whole record" of the case at hand and not upon any isolated portion or portions thereof. And as to the observation that the Master's Report "contains no specific findings of fact to aid the Court" we find that the Master starts off his Report in the following language:
"Pursuant to the order of reference entered in the foregoing action, the undersigned special master begs leave to report that he has heard and considered all of the testimony adduced in the foregoing action, consisting of pages 1 through 416 inclusive of testimony taken before the special master, and Depositions `A', `B', `C', `D' and `E' taken prior to the appointment of the special master, including argument of counsel, and upon consideration thereof, makes the following findings and recommendations:" (Emphasis supplied.)
Then follows sixteen typewritten pages of findings covering every phase of the case, before the Master reaches his "CONCLUSIONS". The portion as to custody, hereinbefore quoted, is the closing part of his findings. We know of no rule which requires a Special Master to make his findings in any specific manner or form. There is no prescribed magic formula of words. When a Master reviews the evidence taken before him at length and expresses his opinion as to the true facts he deduces therefrom, he has made his "findings", and in such event they may be regarded as sufficiently "specific".
In accordance with all the foregoing, we must regretfully reverse the Chancellor as to the custody provisions of his decree. We know the able and experienced Chancellor was conscientious in his views, perhaps "conscientious to a fault", but we also know the able and experienced Master, Hon. Charles H. Ross, was likewise conscientious.
Maybe the legal standards of morality affecting child custody have gradually changed over the years from what they once were, but when the modern views seem to be as well established as the foregoing resume of the case law indicates, and are recognized by such staunch legal moralists as the venerated Justice Glenn Terrell, we *612 in our humble way do not hesitate to follow the trend.
The final decree appealed from is therefore reversed as to the custody provisions contained therein, with directions that the decree be modified so as to give permanent custody of the two minor children to the appellant wife, with the accompanying modifications as to visitations by the father and support money for the children as may be proper and necessary.
Reversed with directions.
SHANNON, J., concurs.
ALLEN, C.J., dissents.