299 So.2d 30 (1974)
Carol King KALMUTZ, Appellant,
v.
Sheldon E. KALMUTZ, Appellee.
Sheldon E. KALMUTZ, Appellant,
v.
Carol King KALMUTZ.
Nos. 73-508, 73-1101.
District Court of Appeal of Florida, Fourth District.
July 26, 1974.
Rehearing Denied September 19, 1974.
*31 Patrick W.E. Gillen, Jr., of Law Offices of James P. O'Flarity, West Palm Beach, for appellant.
L. Martin Flanagan of Jones, Paine and Foster, P.A., West Palm Beach, for appellee.
MAGER, Judge.
This is a consolidated appeal by both parties from an Order on Master's Report and Final Judgment and from an Order of Modification.
Subsequent to the wife filing a petition for dissolution of marriage and upon agreement of both the husband and wife, the lower court (chancellor) appointed a special master "to hear the evidence, to rule upon its admissibility, determine trial procedure and to exercise all other authority *32 according to the applicable provisions of rule 1.490, including the hearing of all pending motions and final hearing in this cause and thereupon to report his findings of fact, conclusions of law and recommendations to the court". Pursuant to such order the special master conducted hearings and submitted a report containing findings of fact and recommendations. The husband filed exceptions to the special master's report. Ultimately, upon consideration of the master's report and the exceptions thereto, the trial court entered an order and final judgment modifying and vacating in several respects some of the recommendations made by the special master. It is from this order that the wife appeals.
While the appeal from the final judgment was pending the wife applied for and received an order for temporary relief which had the effect of requiring the husband to comply with those portions of the final judgment pertaining to the payment of alimony and the making of mortgage payments during the pendency of the appeal. Subsequently, the husband filed a petition to modify the order granting the wife temporary relief pending appeal. The chancellor granted the husband's petition, reducing the alimony payments and vacating the requirement that the husband make mortgage payments.[1] It is from this order that the husband seeks interlocutory review.
The nature of the master's report, the final (and amended) judgment thereon and order on modification (and their relationship to and effect upon each other) are hereinafter summarized. The master recommended (a) payment by the husband of periodic alimony plus mortgage payments;[2] (b) payment by the husband of lump sum alimony or in the alternative that the husband convey his interest in the marital homeplace and pay and satisfy the mortgage thereon;[3] (c) that the wife be awarded a special equity in the amount of 25% in the husband's peach farm; (d) that the husband be held in contempt for failure to comply with an earlier order of the court pertaining to the second mortgage on the marital homeplace and the making of necessary repairs to restore the homeplace to a reasonable livable condition.
Upon the filing by the husband of exceptions to the master's report the chancellor entered his order and final judgment; and upon motion for clarification filed by the *33 wife the trial court entered an amended final judgment all of which had the effect of modifying the master's recommendations as follows: (a) changing the award of periodic alimony to rehabilitative alimony for a period of 12 months and reducing the monthly award;[4] (b) deleting the award of lump sum alimony in its entirety; (c) directing that the wife's special equity in the amount of 25% of respondent's peach farm be subject to any encumbrances on said property and any indebtedness of the (peach) business". The court made no reference whatsoever to the master's recommendation that the husband be held in contempt. It is from this order that the wife maintains the instant appeal.
The testimony before the master of the witnesses and parties with regard to the financial positions or transactions by and between the parties is not a model of clarity. The master performed a most difficult task in wading through a myriad of statements and representations before making his findings of fact and recommendations to the trial court. In determining the correctness of the chancellor's order and final (amended) judgment it is necessary to consider certain general principles applicable to the master-chancellor proceedings.
In Harmon v. Harmon, 40 So.2d 209 (1949), the Supreme Court of Florida was confronted with the propriety of a chancellor's action in overruling a master. Although recognizing the numerous decisions holding that every presumption favors the correctness of the rulings of the chancellor and that a final decree based largely on questions of fact will not be reversed unless the evidence clearly shows that it has been erroneous, the court nonetheless was clear to point out that this presumption loses its strength and weight "where all the testimony was actually heard by the master selected by the chancellor, and none of it was heard by the latter". In this regard the court stated:
"It is our view that the presumption of the correctness of the chancellor's ruling in overriding his master is overcome, for in this case he was in no better vantage point to judge the weight of the testimony on material questions of fact than is a member of this court."
The court in Harmon then discussed the relationship of the master to the chancellor and the circumstances under which a master's findings may be modified:
"While it cannot be questioned that in a case where the chancellor has appointed a master and empowered him to make findings he may override or modify them in any manner consistent with the justice of the case, he may not do this except for good cause. We interpret `good cause' to mean a showing that the findings of fact by the master were clearly erroneous.
"From our study of the subject it seems to us logical, if the master has heard all the testimony, that an exceptant to his findings undertakes the burden of showing that the master has clearly made a mistake  in other words, the same burden as an appellant who challenges in this court the conclusions of fact reached by the chancellor who has heard the witnesses. After all the master acts as an agent of the chancellor, and what he does in the capacity is in effect done by the court. These recommendations should be set aside only upon good cause, even though the findings were, as we held in Burns v. Burns, supra, 153 Fla. 73, 13 So.2d 599, advisory. Federal Equity Practice, Street, Vol. 2, page 910.
"In fine, we have the view that where, as in this case, a competent master is selected by the chancellor and attentively conducts the hearings, thoroughly digests the testimony of the witnesses, and arrives at conclusions which are logical and well supported, his findings, although advisory, should not be set aside *34 arbitrarily or capriciously (of which there is no claim in this case) nor should they be disregarded or overruled by the chancellor simply because of an opinion of the chancellor at variance with that of the master. As we have said, the master was acting as an accredited agent of the chancellor and was at the time performing a service which would have been performed by the chancellor himself but for the appointment. Having seen and heard the witnesses, he had a definite advantage over the chancellor, who received the case from a typewritten record."
See also McAnespie v. McAnespie, Fla. App. 1967, 200 So.2d 606.
Our review of the findings and recommendations of the master, the transcript of testimony in connection therewith, special exceptions to the master's report and the order on the master's report leads us to the view that the findings of the master were not shown to be clearly erroneous. While a chancellor's view of the evidence may be at variance with the master such a variance or difference of opinion is not sufficient to override or modify the master's report absent a showing "that the findings of fact made by the master were clearly erroneous". Accordingly, as hereinafter delineated, in those instances where there was competent substantial (although conflicting) evidence to support the findings of the master his findings must be sustained and the order of the chancellor vacated and set aside.
With respect to the master's finding that the wife be awarded periodic alimony plus mortgage payments we are of the view that the record does not demonstrate that the master's finding in this regard was clearly erroneous so as to empower the trial court to change the award from periodic alimony to rehabilitative alimony for a period of 12 months and reducing the amount. The determination of whether a spouse should be awarded periodic alimony or rehabilitative alimony is a matter resting within the sound discretion of the chancellor based upon the particular facts and circumstances with due regard for the basic principle of need and ability. There was competent substantial evidence before the master to support his determination of periodic alimony; the trial court's award of rehabilitative alimony appears to be predicated upon a difference of opinion rather than upon a determination that the master's findings were clearly erroneous.[5] Cf. Schwartz v. Schwartz, 297 So.2d 117 (3 DCA Fla. 1974).
With respect to the master's finding that the wife be awarded $50,000 lump sum alimony or, in the alternative, that the husband convey his interest in the marital homeplace and pay and satisfy the mortgage thereon, we are of the view that the evidence before the master does not support this determination; the master's finding in this regard was clearly erroneous thereby empowering the chancellor to override this recommendation.[6] The trial court's deletion of the award of lump sum *35 alimony and a determination that the wife be given possession of the home was consistent with the justice of the case.
With respect to the master's finding that the wife be awarded a special equity in the amount of 25% of the husband's peach farm, we are of the view that the record does not demonstrate that the master's finding in this regard was clearly erroneous so as to empower the chancellor to modify this award by subjecting the wife's equity "to any encumbrances on said property and any indebtedness of the business". It appears that the chancellor's modification of the master's special equity award was, perhaps, based upon the chancellor's view of the evidence which was at variance with that of the master.[7]
With respect to the master's finding that the husband be held in contempt for failure to comply with an earlier order of the court pertaining to a second mortgage on the marital homeplace and the making of necessary repairs to restore the marital homeplace to a reasonable livable condition, we are unable to determine whether there was any error committed by the chancellor since no reference whatever was made in the final judgment to the master's finding. Apparently the husband failed to provide certain maintenance and repairs to the marital home pursuant to certain orders of the court (copies of which were not contained in the record on appeal);[8] and, furthermore, the husband apparently ignored the payment of a second mortgage for a period of some twenty months. The amended final judgment appears to deal with the aspect of the second mortgage payments and the final judgment makes reference to certain repairs that the husband is required to make. The import (and silence) of the final judgment and amended final judgment would suggest a consideration by the trial court of the contempt issue and a determination that the husband was not in contempt. However, based upon the record before us we are not prepared to make any determination with regard to the contempt issue. We would prefer, upon remand, that the trial court respectfully revisit this matter and make specific findings and determination consistent with the facts and circumstances and applicable law. See 10A Fla.Jur., Dissolution of Marriage § 365 et seq; Naster v. Naster, Fla. 1964, 163 So.2d 264.
Except as aforesaid in all other respects the order on master's report, final judgment and amended final judgment are affirmed.[9]
Turning now to the husband's interlocutory appeal of the order which reduced the husband's alimony payments and vacated the mortgage payments previously embodied in the final judgment and amended final *36 judgment, we are of the opinion that the order of modification was clearly erroneous. The husband contends that because of his present financial situation the chancellor should not have required him to make any payments.
When a marriage is dissolved it is the duty of the husband to provide for his divorced wife within the limits of her needs, his financial ability and the standards established by himself during the marriage. Royal v. Royal, Fla.App. 1972, 263 So.2d 277; but see Steinhauer v. Steinhauer, Fla.App. 1971, 252 So.2d 825; Rey v. Rey, Fla.App. 1973, 279 So.2d 360; Hanzelik v. Hanzelik, Fla.App. 1974, 294 So.2d 116; Yohem v. Yohem, Fourth District Court of Appeal, 295 So.2d 656, opinion filed June 7, 1974.
As a general principle an alimony award may be modified where there has been a showing of a substantial change in the circumstances of the parties; for example, where the financial ability of the husband to pay has decreased. Barsumian v. Barsumian, Fla.App. 1970, 235 So.2d 515; Knight v. Knight, Fla.App. 1967, 205 So.2d 353. However, where the change in circumstances is a result of a party's own voluntary action a modification is not justified. See 10A Fla.Jur., Dissolution of Marriage, sec. 322. A spouse's inability to pay occasioned by matters within the spouse's control or choice suggests an entry into a court of equity with unclean hands. E.g., Martin v. Martin, Fla.App. 1972, 256 So.2d 553.
The husband's petition to modify was predicated essentially upon his representation that since the entry of the final judgment and the order granting the wife temporary relief he had filed a petition in bankruptcy; that he was not presently practicing as a physician, had no income and had no present prospects for employment; that he was attempting to obtain a license to practice in some state other than Florida; that his assets were less than $500.
The evidence before the master reflected that the husband specialized in internal medicine and had an estimated gross income of approximately $130,000 for the year 1972. His net earnings from his medical practice were as follows: 1969, $37,727; 1970, $44,210; 1971, $63,655; 1972, approximately $84,000. In addition, the husband was receiving an approximate gross return of $40,000 a year from the operation of the peach farm, which the master estimated was worth $300,000.[10] While the master found that the husband has considerable financial obligations he also found that the husband's net worth was $150,000.
At the modification hearing the evidence reflected that due to the husband's failure to pay a $1,450 judgment entered against him the wife levied on his office furniture, professional equipment and instruments. However, the evidence also reflects that the husband had the ability at that time to pay the judgment but chose not to do so and instead letting his practice close down. The husband, as a physician, had a substantial earning capacity (including the peach farm); his duty to meet the needs of his wife or otherwise comply with the orders of the court cannot be avoided or circumvented by voluntary action, i.e., permitting a private practice to be closed down; making no effort to seek other employment; filing a petition in bankruptcy; preparing to leave the State of Florida. It is inconceivable in this day and age that a physician practicing internal medicine is *37 unable to secure some gainful and financially productive employment. Cf. Adams v. Adams, Fla.App. 1973, 273 So.2d 794.
In recent cases, the courts have sought to place an economic responsibility on the woman by causing her to apply whatever ability or talent she may have to earn an adequate income for her own support and maintenance. Beard v. Beard, Fla. App. 1972, 262 So.2d 269. The equality of the marital partnership suggests equal benefits and burdens. A fortiori, it would be an anomalous situation for this court to sanction the refusal of the man, who also possesses the talent and ability to earn a substantial income, to avoid his duties and obligations. Approval of a modification order premised upon the voluntary action of the movant would, in our view, establish a dangerous precedent and would serve to encourage either spouse to avoid their respective duties, responsibilities and obligations. The record before us while suggesting that the husband does not currently possess cash in hand to meet his obligations is devoid of any evidence that the husband lacks the requisite earning capacity; on the contrary, the record seemingly suggests a refusal to meet such obligations.[11] The modification order is, in our view, clearly erroneous.
Accordingly, in light of the foregoing the final judgment, the amended judgment and the order on modification are reversed to the extent as delineated and in all other respects are affirmed; and the cause remanded to the trial court with directions to reinstate the master's report and to take such other actions as are consistent with this opinion.
Affirmed, in part; reversed, in part.
WALDEN, J., and FISCHER, GENE, Associate Judge, concur.
NOTES
[1] It should be noted that the interlocutory order for temporary relief and the petition for modification thereof were directed solely to the matter of temporary relief pending appeal. However, the interlocutory order of modification makes no reference to modification pending appeal but rather provides that the reduced payment of alimony and the vacation of the requirement that the husband make mortgage payments continue "until the husband obtains employment ... or receives other income". There is a serious question as to the authority of the trial court to enter a temporary order affecting the merits of the cause involved in the main appeal or which would have the effect of rendering the main appeal moot. Willey v. W.J. Hoggson Corporation, 1925, 89 Fla. 446, 105 So. 126; State v. Robles, 1933, 109 Fla. 528, 147 So. 910. Unquestionably the trial court has the power to grant temporary relief pending appeal and possesses the inherent power and authority to take such action as justice and equity requires. It would appear, however, that when the jurisdiction of the appellate court attaches it is exclusive as to the subject covered by the appeal; so that modification of an order under appeal would be beyond the jurisdiction of the trial court from the very innate nature of the appellate jurisdiction and from the very practical viewpoint that there is no order to be modified until the appellate court determines what the order actually is. It does not appear to have been the intent of the trial court in the entry of its order of modification to enter an order beyond the period pending appeal and we so construe the interlocutory order under review to relate solely to the particular period pending appeal. In any event, in view of our ultimate disposition of the full appeal and the interlocutory appeal it would make little difference whether the order of modification be construed any broader than "pending appeal".
[2] The amount of alimony fixed by the master was $1,192 per month.
[3] The master fixed lump sum alimony in the amount of $50,000.
[4] The court reduced the master's monthly recommendation from $1,192 to $1,043.
[5] The master's report reflects testimony that the wife, who was 45 years of age, was not capable of working; the wife had never been employed other than working for a period of time for the husband while he was developing his practice. An award of rehabilitative alimony is appropriate in those situations where it is possible for the person to develop anew or redevelop a capacity for self-support. The record in the case at bar is devoid of any evidence that the wife will be rehabilitated in one year and there was no inquiry as to whether the wife was employable except her own statement that she had never worked before and had received no special job training. See Reback v. Reback, 3 DCA Fla. 1974, 296 So.2d 541, opinion filed May 7, 1974.
[6] Testimony before the master reflected that the husband's financial situation did not justify a $50,000 lump sum cash award or an ability to retire the mortgage on the home. Apart from the lack of the husband's financial ability in this respect, the evidence before the chancellor negated any need on the part of the wife for the award of the marital homeplace. There were no minor children to raise (the wife had two sons aged 23 and 24 from prior marriage). In addition, the wife owned a home jointly in Daytona Beach with her former husband.
[7] The evidence before the master demonstrates that the peach farm consists of 153 acres and was acquired through the joint efforts of the husband and the wife, i.e., the husband having purchased 100 acres before the marriage and the wife having purchased an additional 53 acres. Although the wife purchased one-third of the acreage the master awarded her a special equity of only 25%, which may have been the reason for not subjecting that special equity award to any encumbrances or indebtedness.
[8] We find no merit in the wife's contention that the chancellor's order directing the husband to make certain necessary repairs to the marital home place is in any way inconsistent with the master's findings that the husband "perfect the necessary repairs to restore the homeplace to a reasonably liveable condition."
[9] Consideration of evidence and testimony based upon a "cold-type" transcript obviously cannot be equated to a determination made by a trier of fact who has "seen and heard the witnesses" and digested their testimony. For that reason great weight is given to the finding made by the trier of fact with the corresponding reluctance by the appellate court to attempt to re-evaluate such findings. In this case the relationship of the chancellor to the master (and his findings) is not unlike the relation between an appellate court and the trial court. For that reason the chancellor's scope of discretion was bounded by the standard of whether the findings of fact made by the master were "clearly erroneous".
[10] There was conflicting testimony as to the value of the peach farm and while the figures were not precise there was some testimony suggesting that a $450,000 offer had been made to purchase the farm. While not constituting an exact value, the husband testified that he would not accept less than $5,000 an acre (153-acre peach farm).
[11] Gamse v. Gamse, Fla.App. 1974, 291 So.2d 620.