HURLEY, J.,
dissenting.
I cannot agree with the implied but major premise of the majority opinion, i.e., *1388 that the wife pled fraud, misrepresentation, or other affirmative deception in the execution of the “official” property settlement agreement so as to justify continued enforcement of the “side agreement.” The amended petition is set forth in its totality below so the reader may make his or her own evaluation. The “side agreement” is mentioned in the last part of paragraph seven.[1]
*1389 Since the enforceability of the “side agreement” was not pled and because this issue was not tried with the express or implied consent of the parties, I believe that the trial court was correct in sustaining the husband’s exceptions to the master’s recommendations. The court correctly found that the master misconceived the legal effect of the evidence. Frank v. Frank, 75 So.2d 282 (Fla.1954). In the same vein, given the undisputed evidence of the wife’s substantial liquid assets, I believe that the trial court was justified in rejecting the master’s recommendation as to attorney’s fees. See Sitomer v. Sitomer, 397 So.2d 373 (Fla. 4th DCA 1981); Bergh v. Bergh, 127 So.2d 481 (Fla. 1st DCA), cert. denied, 133 So.2d 323 (Fla.1961).

. The wife filed the following Amended Petition for Modification and/or Setting Aside Property Settlement Agreement:
COMES NOW Respondent, CHARLENE B. KRISCHER, and petitions this Court for Modification and/or Setting Aside of the Separation and Property Settlement Agreement dated March 3, 1980, and in support thereof would state:
1. That she and the Petitioner, KENNETH N. KRISCHER, were divorced on April 8, 1980, at which time the said Property Settlement Agreement was offered in evidence at a hearing in which Respondent/Wife was not present.
2. The parties have one child, namely, BRIAN SCOTT KRISCHER, age 8.
3. Respondent/Wife asks that the Property Settlement Agreement offered into evidence be set aside in that although there was an original draft of an agreement prepared by Wife’s attorney to start negotiations, said attorney in fact never subsequently represented her, was not the attorney of record, and never saw the Property Settlement Agreement subsequently prepared by the Husband’s attorney.
4. When the Wife was presented with the finalized Property Settlement Agreement for her signature, she requested of her Husband that she be allowed to show same to her attorney, but the Husband said that he was in a rush because his former wife, Iris Krischer, was taking his deposition.
5. That relations at the time between Petitioner and Respondent were very friendly and as the Husband had assured the Wife that he would always take care of her and their son, Wife did not show the drafted final Property Settlement Agreement to an attorney and signed same.
6. In fact, Petitioner remarried within five (5) days which was a total surprise to Respondent.
7. At the time of the signing of the Property Settlement Agreement, Wife had just become employed by Johnson & Johnson as a realtor associate, but was able to show income for 1979 of approximately $18,000.00 as it comprised salary from previous employment, South County Medical Center, plus interest income and support. She further showed approximately $17,000.00 for 1980 from the same sources. For the year 1981 to date, Wife has earned $1,000.00 from one closing and anticipates no further closings at this time; the Husband is no longer paying alimony; child support has been cut to $250.00 per month. In fact, Husband signed
a separate statement setting out that he would pay an additional $250.00 per month, a copy of which is attached and marked Exhibit A, which was not a part of the drafted, signed Property Settlement Agreement. The statement agreed to review the position as of December, 1980, which the Husband did unilaterally and decided not to continue the additional $250.00 per month payment.
8. In addition, the Husband and Wife filed joint income tax returns for 1977, 1978 and 1979, from which, to the information and belief of the Wife, there were refunds; however, Wife has never received any proceeds from same.
9. Due to an inflation rate of approximately 13%, Wife’s purchasing power has been drastically cut and she is having a great deal of difficulty in supporting Brian Scott. She is in debt and has had many overdrafts from the bank, a composite copy of which is attached and Marked Exhibit B.
On the other hand, the Husband is a physician earning in 1979 approximately $85,-000.00, and he further has a tax shelter of approximately $100,000 in a computer company as evidenced by copy of 1979 Federal income tax return face sheet and form 4832, which are attached and marked Exhibit C.
10. In addition, there is an issue of escrow money from the sale of property in Lighthouse Point, Florida, distribution of which cannot be agreed, and therefore Wife asks this Court under its continuing jurisdiction, to make some equitable distribution.
11. Further, Wife acted as the real estate agent in the sale of the aforesaid property and is therefore entitled to the commission due upon sale in the amount of $4,000.00.
12. That in order for the wife to protect her interests in this cause she has had to engage counsel but is without sufficient funds to pay her attorneys; that the Husband is well-able to pay such fees and costs herein.
WHEREFORE, Wife prays that this Court will:
a) Set aside the Property Settlement Agreement as Wife was never, in fact, represented by counsel, or, in the alternative modify same insofar as child support payable.
b) Grant more equitable distribution of income tax refunds for the years 1977, 1978 and 1979.
c) Grant her distribution of the proceeds from sale now held in escrow.
d) Grant her payment of the commission due on the sale of the house.
e) Grant her reasonable attorneys’ fees and costs.
*1389 f) Grant her such further and general relief as this Court may deem just and proper.
(Emphasis supplied).