74 So.2d 59 (1954)
SLATCOFF
v.
DEZEN et al.
Supreme Court of Florida. En Banc.
July 20, 1954.
*60 Ginsberg & Pelle, Miami, for petitioner.
Englander & Hoffman, Miami Beach, for respondents.
Chester Bedell, Jacksonville, for the Florida Bar, amicus curiae.
THOMAS, Justice.
The facts in this controversy may be stated in one sentence: When the issues were formed, the plaintiff requested the chancellor to set the cause for trial but the chancellor, despite the objections of the plaintiff, appointed on his own motion a special master in chancery and directed the master to take the testimony and "report his findings of fact and conclusions of law * * * with his recommendations." From this procedure arises the question whether a chancellor has the power to refer a case to a master with instructions to hear the witnesses and make findings of fact based on the testimony, and to report his findings as well as his conclusions relative to the applicable law if a party-litigant objects.
At the outset we should state with candor that the importance of the problem is emphasized by the opinion of this Court in Harmon v. Harmon, Fla., 40 So.2d 209, because we there gave considerable dignity to a master's findings of fact, holding that inasmuch as he had observed the witnesses when they testified, his deductions and determinations could not be upset unless he had clearly made a mistake. To state it otherwise the master had in such circumstances an advantage as an accredited agent of the court and his findings of fact should not be set aside except for "good cause." As we had held that the presumption of correctness of a chancellor's findings was one of degree, being stronger where he had heard the testimony, so we translated the principle to findings of a master who had heard the testimony. By such reasoning we reached the conclusion that the weight of the findings of a master based upon testimony he had heard should be the same before the chancellor as the weight of a chancellor's findings based upon testimony he had heard would be before this Court.
Nothing was written in the case of Harmon v. Harmon, supra, that would warrant the interpretation that reference to a master constituted a delegation of power to him to decide the whole case. Since that decision, the Court has held that even in the absence of exceptions to the special master's report it is "the duty of the court to examine and carefully consider the evidence and determine whether under the law and the facts the court is justified in entering the decree recommended by the Master." Lyon v. Lyon, Fla., 54 So.2d 679, 680. At the time this decision was rendered Equity Rule No. 65 provided that if no exceptions to the master's report were taken, the report should be confirmed by order or decree. Effective 1 June 1954 this part of the rule was changed to provide that in the absence of exceptions "the court shall take such action on the report as may be appropriate." Rule 3.14(l) 1954, Florida Rules of Civil Procedure.
In Harmon v. Harmon, supra, we recognized, and did not recede from, the rule announced in McAdow v. Smith, 127 Fla. 29, 172 So. 448, and Kent v. Knowles, 101 Fla. 1375, 133 So. 315, that where a matter is submitted to a special master by agreement of the parties, the master's findings could not be set aside at the bare discretion of the Court but had the weight of the verdict of a jury. In the case of Kent v. Knowles, supra [101 Fla. 1375, 133 So. 316], the Court referred to the decision in Croom v. Ocala Plumbing & Electric Co., 62 Fla. 460, 57 So. 243, where it was written that the "`rule is well settled that when the parties consent to the reference of a case to a master or other officer to hear and decide all the issues therein, both of fact and law, and such reference is entered as a rule of court, it is a submission of the controversy to a special tribunal, selected by the parties, *61 * * * and its determinations are not subject to be set aside and disregarded at the bare discretion of the court'". (Italics supplied.)
It is clear from an examination of the original record in Croom v. Ocala Plumbing & Electric Co., supra, that the attorneys consented to a reference to a master, but it is not clear that the master named was especially endorsed by them although the order of reference is subject to that interpretation. In Harmon v. Harmon, supra, the original record discloses no consent to the appointment of a master or protest against that course. In McAdow v. Smith and Kent v. Knowles, supra, the parties agreed to the appointment of a particular person as special master and the chancellor's action in making the appointment was not challenged here.
The practical situation of the Harmon case has little resemblance to the matter before us for there, in the absence of any objection, the matter was referred to a competent attorney who proceeded to hear testimony that, when transcribed, filled over six hundred pages. For his services the master received $1,500. The reasonableness of the compensation was not questioned but what we said, and now reiterate, is that when a party to a chancery suit asks for the appointment of a master and the case is referred without objection and the amount of work done by a competent attorney is measured by the allowance just stated, the task he assumed and the authority delegated to him, give his conclusions of fact, based on the testimony he himself heard, such importance and significance that they may not be overridden unless clearly wrong.
Of course, we realize the weight of the findings should not depend on the size of the master's fee, and that in many instances the chancellors must, to expedite litigation, appoint masters for certain services, but the fact remains that despite the policy of the State to administer justice primarily at the State's expense, when a master is appointed the cost of his services falls on the litigants.
So if the ruling in the Harmon case had been the opposite, the parties, or some of them, would have borne the substantial fee only to have the case retried by the chancellor who had not meanwhile seen any of the witnesses. In such event the professional skill of the master would have come to naught.
The petitioner concedes that a special master may be appointed to perform a ministerial service even over the objection of one of the parties, but she insists that the appointment of one to make findings of the facts of the whole case which would have the weight of a jury verdict under one of the cases cited, which could not be lightly overruled under another case cited, and which could not be overridden under the Harmon case, unless clearly erroneous, violates her constitutional rights if done over her protest.
There are provisions in the F.S.A. Constitution for the performance of judicial functions by persons other than judges of courts. Under Section 14 of Article V the circuit judge may appoint court commissioners with the limited power to issue writs of injunction and habeas corpus in the absence of the circuit judge from the county, but the orders of such commissioners are subject to review by the circuit judge who may confirm, qualify or vacate them. Further, under Section 19 of Article V, a judge ad litem may try a case if the judge is disqualified and under Section 20 of the same Article, a referee may try a case upon order of the judge, but references to judges ad litem and referees depend upon the agreement of the parties.
Although there is no reference in the Constitution to masters, we have no difficulty in deciding that courts of chancery may appoint them to assist in the disposition of litigation, nor do we underestimate the need of their services in many instances. We are only concerned with the extent of the authority which may be conferred upon them and the effect upon that authority of the consent, acquiescence or objection of the immediate parties.
*62 Under an Act of the Legislative Council of the Territory of Florida, approved 15 March 1844, testimony in chancery cases was authorized to be taken in open court, or before the judge in vacation or before an examiner appointed by the court. The examiner could take the testimony orally or upon written interrogatories in such manner as might be prescribed by the rules of practice of the court.
In the first general assembly after the admission of Florida into the Union, an Act, Chapter 51, 1845, was passed "regulating the appointment of Masters in Chancery, and defining their duties." Here again it was specified that after their appointment, in writing, and qualification, by taking an oath, the masters should "perform, under the direction of the Court, all the duties which, according to the practice in Chancery, appertain to the office." (Italics supplied.)
In spite of the reference to the duties conforming to the practice, the Act contained detailed provisions about procedure before the master, from the time of reference to the filing of his report. There was express provision that masters should "have all the powers conferred on Masters in Chancery by the rules of practice prescribed by the Supreme Court of the United States, for the Chancery Courts of the United States, now in force in this State." Sec. 18, Chap. 51, 1845.
In Bush's Digest of the Statute Law of Florida, (1872) which contains the Code of Procedure, we find that although the Constitution then fixed jurisdiction in all cases in equity, as well as certain cases at law, in the circuit courts, the Code provided that "The distinction between actions at law and suits in equity" be abolished. Sec. 49, Title I, Part Second. Aside from historic interest the provision does introduce the manner then inaugurated of taking testimony by someone other than the judge, or chancellor, and the weight given findings based on that testimony. The Code, under the caption "Trial by Referees," carried the provisions that any issues of fact or law could be referred "upon the written consent of the parties." Sec. 216, Title VIII, Part Second. It also contained the provision that the Court could "upon application of either party * * * direct a reference" in certain circumstances. For instance, if the examination was to be protracted, the referee might be directed "to hear and decide the whole issue." Sec. 217, Title VIII, Part Second. Referees were required to "state the facts found, and the conclusions of law, separately." "The report of the referees upon the whole issue shall stand as the decision of the Court, and judgment may be entered thereon in the same manner as if the action had been tried by the Court." So it was provided in Sec. 218, Title VIII, Part Second. We next refer to McClellan's Digest (1881) where there were incorporated many, if not all, of the provisions of Chapter 51 of the Acts of 1845 and where the powers of the master in accomplishing his assignment were outlined but the weight of his findings was not defined. No further light on this subject is shed by the Revised General Statutes or by the compilations and revisions since that time until the enactment of the 1931 Chancery Act. In Section 57 of that law it was provided that the Court could appoint from the members of the bar in active practice special masters for a "particular service" and there was included a proviso that upon "proper showing * * * that such appointment is advisable in the particular case, a person other than a member of the bar may be appointed * * *." The identical language of Section 57 of the 1931 Chancery Act appeared in Equity Rule 57. The present rule, 3.14(b) Florida Rules of Civil Procedure, is the same except that selection must now be made from the members of the Bar of Florida instead of the Bar of the Court in active practice, in the first instance.
So we learn from our research of the statutes and rules in force from time to time over a period of more than a hundred years that the appointment of masters to assist chancellors in the adjudication of their cases is a practice that has been followed with variations throughout that time.
The value of the services of masters in chancery to the expeditious and economical *63 functioning of the chancery courts is obvious, but it is now time to define the authority they exercise on behalf of the appointing court when that authority is translated to the findings they reach. We undertake to blend decisions that these findings are merely advisory, are as efficacious as jury verdicts, and are so forceful that they cannot, at least on questions of fact, be overridden unless clearly erroneous. And, necessarily, the effect of their findings must be properly assayed by giving due consideration to the manner of their appointment, that is whether the parties to the suit agreed, acquiesced or protested.
It should be noticed that there is no prerequisite that special masters take an oath, although they may be required to do so. Equity Rule 57, now 3.14(b). Neither general nor special masters need give bond except in certain circumstances. Equity Rule 56, now 3.14(e). Special masters need not even be members of the Bar for that qualification may be dispensed with in a "particular case." Equity Rule 57, now 3.14(b). Neither a general master nor a special master must be of the age, twenty-five, to make him eligible to appointment as circuit judge, Section 3, Article V, an office carrying with it the power to exercise chancery jurisdiction.
From the textbooks we have consulted, it appears that their authors are in unanimous agreement that the whole case should not be referred to a master unless the parties consent. In Henderson's Chancery Practice at page 169, it is written that "The practice of referring the whole case to the master for determination, thus allowing him to usurp the function of the court, has never been sanctioned except by consent of parties."
In Whitehouse Equity Practice, Vol. 1, page 583, there is the statement that it "is not competent for a court of chancery to refer to a master the entire decision of the whole cause upon all the issues both of fact and of law, without the consent of the parties." In a Treatise on Equity Pleading and Practice by Van Zile at page 435, the author states: "In the judge of the court alone is vested the authority to fully and finally determine the issues of law and fact in every cause brought into the court, and he cannot delegate that authority to any other person or officer, except by consent of all the parties to the case." Professor Fletcher in his Equity Pleading and Practice at page 595, wrote: "It is not within the general province of a master to pass upon all the issues in a cause, nor should the court refer the entire decision of the case to him, without the consent of the parties." Beach on Equity Practice, Vol. II, at page 666, has the statement that "It is not competent for a court of chancery, of its own motion or upon the request of one party, to abdicate its duty to determine by its own judgment the controversy presented and devolve that duty upon any of its officers."
Our Constitution vests exclusive original jurisdiction of equity cases in the courts, Section 11, Art. V. We stress this simple provision to remind the parties, the reader and us that a consideration of the advantages and practicalities of the master system must be restricted by the knowledge that there is no organic provision for delegation by the Court to a master of any of the Court's power.
From our study of the history of masters in the judicial system and from our examination of statutes enacted from time to time, and the present Court rules, having at all times regard for the constitutional provision vesting unqualified power in the Court, we conclude that special masters may be appointed to serve in a ministerial capacity to perform a "particular service," if the chancellor in his discretion decides that such action is necessary to aid the court in an accurate and expeditious determination of the cause. The validity of these appointments for limited service will not be affected by the want of agreement on the part of the litigants, or even their protest, and the reports of special masters in such cases shall be advisory.
The only authority for the appointment of special masters by the chancellor on his own motion is found in the rule we have cited and it is plain from its language that there *64 was no intention to delegate to such special masters the authority to hear all the case. On the contrary, there appears to have been a purpose to restrict their use, as was the case in the Federal System when Rule 53 of the Federal Rules of Civil Procedure, 28 U.S.C.A., was adopted. There it is provided that "reference to a master shall be the exception and not the rule", also that in jury cases there shall be a reference "only when the issues are complicated" and in nonjury cases "save in matters of account, * * * only upon a showing that some exceptional condition requires it." We note, parenthetically, that in nonjury actions "the court shall accept the master's findings of fact unless clearly erroneous." (Italics supplied.)
If a party moves for the reference of the entire cause to a special master and there is no objection, or the adversaries consent, then there is tacit or express waiver of the right to have the chancellor hear the witnesses without cost to the litigants of a fee for expert appraisal of the testimony. And if that procedure is followed, the chancellor, though he is the final arbiter with power to dispose of the dispute by decree, may not put aside the findings of fact unless they are "clearly erroneous."
The difficulty in deciding the present case lies in the fact that it is in neither extreme category, that is, the master was not charged with performing a "particular service," if those words are to be construed as referring to a phase or single issue of the controversy, or deciding the whole case, unless the opinion in Harmon v. Harmon is given that interpretation, with which construction we do not, of course, agree. It is one thing to delegate to a master the power to decide; quite another to authorize a master, without objection, to make findings of fact which may not be disturbed unless clearly wrong. In the latter situation, the parties are saddled with the cost of expert appraisal of testimony only to find, if the rule announced in Harmon v. Harmon, supra, and since frequently followed, is not applied, that the expense was one that could have been avoided wholly or in large part either by the chancellor's hearing the testimony or appointing someone equipped simply to record and transcribe the testimony.
We think that cases like the present one are in a separate class. If a motion is made to refer the whole controversy to the master with directions to report findings of fact and conclusions of law and the adversary does not consent or acquiesce but objects, then the reference should not be made, for to do so would so extend the meaning of the words "particular service" that they would lose their signification, while the protestant would be forced to submit his testimony in its entirety before a substitute for a legally constituted judicial officer qualified to weigh it. And it cannot be gain-said that it is more beneficial to the litigants to present a case before the one who will ultimately determine it.
As we said in the outset, this controversy seems to have been generated by the decision in Harmon v. Harmon, supra, or, at least by the interpretation placed upon it by petitioner, and in closing, we wish to make it clear that that decision did not deal with the way the litigant is taken to the master, but with the quality of the product after he had returned.
We would be ungrateful if we did not acknowledge the assistance given us in this case by Mr. Chester Bedell of the Jacksonville Bar. Realizing the importance of the decision to the Bench and Bar the Court asked The Florida Bar to appear as amicus curiae and the president of that organization appointed Mr. Bedell to file a brief and to argue the case. He aided us greatly in our effort to solve a most difficult problem.
The petition is granted and the order appointing the special master is quashed.
ROBERTS, C.J., and TERRELL, SEBRING, HOBSON, MATHEWS and DREW, JJ., concur.