MAGER, Judge
(concurring specially) :
The petitioner, Astley Tucker, has properly filed a petition for the issuance of a writ of habeas corpus contending that his detention in the South Florida State Hospital is unlawful and constitutes “an illegal deprivation of liberty”. Clark v. State, Fla.App.1960, 122 So.2d 807.
It appears from the pleadings that the trial court appointed a special master for the purpose of conducting and presiding over a hearing involving an involuntary hospitalization under chapter 394, commonly referred to as the Baker Act. In particular, the trial judge appointed a special master to conduct such hearing with respect to the petitioner and as a result the master entered an order entitled “Order for Involuntary Hospitalization”, which order was subsequently “accepted by the court and ratified and confirmed”.[1]
Essentially, it is the petitioner’s contention that no authority exists for the appointment of a special master to conduct a hearing for involuntary hospitalization under the Baker Act; nor do the provisions of such act empower a special master to order involuntary hospitalization pursuant to the conduct of such hearing.
If the petitioner’s detention was solely on the basis of an order of a special master I would agree with the latter contention of petitioner. However, the added ingredient of a court order accepting, ratifying and confirming the order of the special master negates the suggestion of an invalid detention.
A review of Part 1 of chapter 394, known as “The Florida Mental Health Act” or “Baker Act”, reveals a provision relating to involuntary hospitalization (§ 394.-467, F.S.). The import of sec. 394.467 is that it provides a procedure for the hospitalization of a person who is mentally ill and because of his illness is likely to injure himself or others or is in need of care and, treatment and lacks sufficient capacity to seek voluntary hospitalization. Involuntary hospitalization is for a period not to exceed six months.
The involuntary hospitalization procedure is initiated by the action of an administrator of a designated receiving facility resulting in the examination of the prospective admittee by two physicians. The procedure contemplates notice and hearing; however the hearing may be waived by the patient, his guardian or representative. The procedure also provides for the appointment of an attorney if the patient cannot afford one.
Additionally, under the language of sec. 394.467 the holding of the hearing, appointment of counsel and the ultimate entry of an order for commitment to a treatment facility, involves action by the “court” and a “judge” thereof. According to the provisions of sec. 394.455(21) and (22), “court” is defined to mean “the circuit court” and the word “judge” means “a judge of the circuit court or the judge designated to act under this act by the chief judge of a circuit”.
While sec. 394.467 makes no specific reference ,to the appointment or use of *571 “masters”, the provisions of Rule 1.490, F.R.C.P., specifically provide for the appointment by the court of “special masters” for “any particular service required by the court”. It is the respondent’s position that Rule 1.490, particularly the aforementioned quoted language, provides the necessary authorization for the appointment and use of special masters in connection with involuntary hospitalization procedures.
A review of case law, treatises and law review articles dealing with the subject matter of masters and hospitalization of incompetents fails to reflect any expression whatsoever pertaining to the authority for and the appointment of a special master in an incompetency proceeding. The novelty or uniqueness of the proposition however does not suggest its impossibility, impropriety or invalidity.
The historical basis for and the use and authority of special masters is fully discussed in the various treatises and case law. See 28 Fla.Jur., References, p. 83 et seq.; 66 Am.Jur.2d, References, p. 475 et seq.; Slatcoff v. Desen, Fla.1954, 74 So.2d 59; Bell v. Bell, Fla.App.1975, 307 So. 2d 911. Basically, the reference of an action to a special master (as distinguished from a general master) was a consequence of the inherent power of the court, specifically a court of equity; such reference contemplated limited service by the appointee for a particular aspect of the cause. See Slatcoff v. Dezen, supra; see also Rule 1.490(b).
It does not appear to have been the intention, either under the common law or the rules of procedure for the special master to hear “the entire case”. In particular, the following observations made by the Supreme Court in Slatcoff are persuasive and instructive:
“From our study of the history of masters in the judicial system and from our examination of statutes enacted from time to time, and the present Court rules, having at all times regard for the constitutional provision vesting unqualified power in the Court, we conclude that special masters may be appointed to serve in a ministerial capacity to perform a ‘particular service,’ if the chancellor in his discretion decides that such action is necessary to aid the court in an accurate and expeditious determination of the cause. The validity of these appointments for limited service will not be affected by the want of agreement on the part of the litigants, or even their protest, and the reports of special masters in such cases shall he advisory.
“The only authority for the appointment of special masters by the chancellor on his own motion is found in the rule we have cited and it is plain from its language that there was no intention to delegate to such special masters the authority to hear all the case. . . .” (Emphasis added.) (74 So.2d at 63, 64)
Even in those instances where a general master was appointed to hear the entire case, the final disposition was always made by the court, Slatcoff, supra, at p. 64; however, the court was bound by the restrictive “clearly erroneous” doctrine. See Harmon v. Harmon, Fla.1949, 40 So.2d 209.
Therefore, to the extent that the order for voluntary hospitalization in the instant case undertook to make a final (judicial) disposition by ordering the commitment of petitioner, it was invalid. However, I am not prepared to conclude that the appointment and limited use of a special master in an involuntary hospitalization case is totally unauthorized and that a resulting order of commitment is completely invalid. Although references to a special master “should be the exception and not the rule”, Slatcoff, supra, such references when followed by appropriate judicial action will not invalidate an order for involuntary hospitalization.
*572 In the instance where a special master is utilized pursuant to an order of the court, the findings of such special master would be advisory only with the ultimate determination and disposition to be made by the court. Such determination and disposition (and the preceding hearing conducted by the special master) would be consistent with the intent of sec. 394.467(3) and otherwise authorized by Rule 1.490(b).
Although we are keenly aware that the dockets of the trial court (as well as the appellate court) reflect a staggering volume of litigation, the judicial power of the court to hear and adjudicate cannot be delegated to a special master; nor should the volume of litigation transform what is now a recognized “exception” into a general rule of practice, i. e., the constant use of special masters in involuntary hospitalization cases. See Bell v. Bell, supra.
The ultimate determination of whether to utilize a special master in such cases still rests within the sound discretion of the trial court; the comments herein are not intended to second guess a reference made in any given case but merely to point out the restriction upon such reference.
Therefore, it is my view that a circuit judge acting pursuant to sec. 394.467 is authorized, in accordance with Rule 1.490(b), to appoint a special master for the limited purpose of conducting a hearing and preparing a report in connection with involuntary hospitalization under the Baker Act. Any commitment to a treatment facility following a hearing and a report by a special master shall only be pursuant to an adjudication of incompetency and an order of commitment executed by a judge of the circuit court.
The restraint of one’s liberty, particularly where one lacks the capacity to even understand such restraint, demands no less than an adjudication by a court and an order by a judge.
In reviewing the order entitled “Order Ratifying and Confirming Acts of Special Master” I would observe that while the order does not contain the necessary precision and specificity of language as might be customary, I am satisfied that the action of the court in ratifying, confirming and accepting the report of the special master was, in this instance, tantamount to the adjudication of mental incompetency and order for commitment to a treatment facility.[2] I am further satisfied that the action of the lower court was well intentioned and motivated by a conscientious and sincere effort to best utilize judicial labors and involvement in hospitalization procedures.
Accordingly, in light of the foregoing, I concur in the discharge of the rule to show cause and the dismissal of the petition for habeas corpus.

. At the time of the filing of the petition for writ of habeas corpus in this court, i. e., June 18, 1975, the only order relating to the detention of the petitioner was the order entered by the special master. In response to the issuance of this court’s rule to show cause why the petition for writ should not be granted, the state filed a belated return and brief (the return and brief were due on or before July 3 and were not filed in this court until July 7 and July 28 respectively). Attached to the state’s response was an order dated June 19, entered by the trial court entitled “Order Ratifying and Confirming Acts of Special Master”.

. It is to be noted that the language of paragraph 3 of the ratification order also suggests a prospective ratification, which would be inconsistent with the observations made herein. Said paragraph provides: “ . . . (3) A copy of this Order shall be placed in each amd every case heard and/or presided over by the Special Master, . . . The ratification order will not serve as an authorization for and approval of action taken by the special master in cases other than the instant situation. In every other case, a separate order should be entered making a precise adjudication of mental incompetency and a direction for commitment.