662 So.2d 1276 (1995)
William DE CLEMENTS, Appellant,
v.
Constance DE CLEMENTS, Appellee.
No. 93-2599.
District Court of Appeal of Florida, Third District.
September 27, 1995.
Rehearing Denied December 13, 1995.
*1278 Edward C. Vining, Jr., Miami, for appellant.
Pepe & Nemire and Thomas F. Pepe, Miami, for appellee.
Renee Goldenberg, Chair-Elect and Deborah Marks, Chair of Amicus Curiae Committee, for The Family Law Section of the Florida Bar.
Before SCHWARTZ, C.J., and HUBBART, NESBITT, BASKIN, JORGENSON, COPE, LEVY, GERSTEN, GODERICH and GREEN, JJ.

ON HEARING EN BANC
LEVY, Judge.
A husband appeals a trial court order affirming and adopting a General Master's Report and Recommendation in a dissolution of marriage case. We reverse because we find that the trial court was not entitled to accept and ratify the General Master's report, since the report at issue was filed by the Master without a written record of the evidence, and was therefore a defective report in derogation of Florida Rule of Civil Procedure 1.490(f). We have set this matter for en banc consideration because it presents unsettled issues regarding the record-keeping duties and responsibilities of Masters pursuant to Florida Rule of Civil Procedure 1.490(f), and because several of our decisions interpreting Rule 1.490(f) need to be harmonized. See Fla.R.App.P. 9.331(a).

I. THE FACTS

The appellee Constance De Clements (hereinafter "the wife") filed a Petition for Dissolution of Marriage. Thereafter, the appellant William De Clements (hereinafter "the husband") filed an Answer and Counter-petition for Dissolution of Marriage. The trial court entered an order referring the case to a General Master. The General Master held four hearings and entered a Report and Recommendation in August of 1993. After receiving the General Master's report, the husband filed exceptions to the report with the trial court. Upon finding out that the General Master had failed to include a written statement of the evidence with the report, the husband filed a motion to reschedule the hearing on his exceptions. Alternatively, the husband requested that the court remand the case to the General Master for further hearing, or that the trial court grant his exceptions. The court denied the husband's motions and instead entered an order overruling the husband's exceptions and approving and ratifying the General Master's Report and Recommendations.[1] In *1279 its order, the trial court found that the parties' attorneys had executed a written waiver of record at one of the hearings held before the General Master, and that a court reporter had been present at the other three hearings which led to the Master's report. Following the entry of the Court's order, the husband moved for rehearing. In opposition to this Motion for Rehearing, the wife filed a copy of the notes taken by the General Master at the aforementioned hearings. These notes consisted of nine hand-written pages of notes which are both incomplete and illegible. The trial court denied the rehearing motion. The husband then filed this timely appeal, challenging the trial court's order which ratifies and adopts the General Master's Report and Recommendations.[2]

II. HISTORY OF MASTERS IN THE JUDICIAL SYSTEM

In order to properly resolve the important issues before us, we must first address and explore the history and rationale of the Masters system and Florida Rule of Civil Procedure 1.490(f). In doing so, we intend to shed light on the various limitations which have evolved, and which must be enforced, to ensure that the reference process is not abused. These limitations must also be cautiously safeguarded because they assure that the litigant will have his or her case decided, or at least reviewed, by a judge.
The practice of utilizing Masters to assist trial judges in the disposition of cases, also known as the reference process[3], predates the American legal system and has its origins in common law English chancery courts during the reign of King Henry VIII.[4] The subcommittee notes for Florida Rule of Civil Procedure 1.490, and its predecessors,[5] reveal that the reference process in Florida is based mainly on Federal Rule of Civil Procedure 53; the rule which established the Masters system in federal court. The Advisory Committee Notes for Federal Rule 53, reveal that Rule 53 has its origins in the common law rules of equity which authorized the use of Masters in chancery.[6] In England, chancellors would primarily utilize Masters as assistants to aid in the performance of ministerial functions such as: recording testimony, disposing of property in pursuance of settling judgments, presiding over evidentiary hearings, tabulating damages, and auditing accounts.[7] Despite the usefulness of these Masters, several abuses by the Masters led to the abolition of the reference system in chancery courts midway through the seventeenth century.[8]
As with the chancery courts in England, the practice of referring cases to Masters in federal court is and has always been "the exception and not the rule."[9] Nevertheless, despite the lessons of history, congestion in *1280 the federal court system spawned the use of Masters in the United States as early as the colonial period.[10] Likewise, the Florida court system began employing Masters to aid judges as early as the mid-nineteenth century. See Slatcoff, 74 So.2d at 62; 21 Fla. L.Prac. Reference § 21 (1964). We cannot deny that Masters, when properly utilized, have been extremely useful in aiding our trial judges with their dockets. The Florida Supreme Court itself has explicitly recognized the value Masters have had throughout Florida's judicial history in aiding, and making more efficient, the judicial process. See Slatcoff, 74 So.2d at 62-63 ("The value of the services of Masters in chancery to the expeditious and economical functioning of the chancery courts is obvious... ."). Nonetheless, despite its advantages, the use of Masters in Florida should be tempered by the fact that there is no provision within the Florida Constitution authorizing Masters to perform judicial functions, or authorizing the use of Masters in the disposition of cases. See Art. V, §§ 5-6, Fla. Const.; Slatcoff v. Dezen, 74 So.2d 59, 61 (Fla. 1954). Instead, our Constitution vests original jurisdiction over both equitable and non-equitable matters in the circuit and county courts. Art. V, §§ 5-6, Fla. Const.
Consequently, although we appreciate that the birth and use of Masters throughout legal history originated as a practical solution to the pressures resulting from burgeoning case loads, we nevertheless recognize that at the other side of this practical coin lie salient concerns regarding the constitutional rights of litigants to have their cases decided by a judge and/or a jury. See La Buy v. Howes Leather Co., 352 U.S. 249, 77 S.Ct. 309, 1 L.Ed.2d 290 (1957); Los Angeles Brush Mfg. Corp. v. James, 272 U.S. 701, 47 S.Ct. 286, 71 L.Ed. 481 (1927). These concerns are, and should be, paramount to the judiciary's interest in maintaining an efficient docket. As so eloquently stated by United States District Judge Irving R. Kaufman:
The chief factor militating against unrestricted references in the federal courts is the possibility that it may result in an abdication of the judicial function, exclusively reserved by the Constitution to the federal judiciary. In addition, determinations by a master are made without all of the legal and institutional safeguards intended to assure the selection of a competent judiciary. American policy... upholds the right of a litigant to have his suit tried before a judge and/or jury if he so requests. Though the absolute right to have the court and jury determine in the first instance all issues in a litigation may in some few instances be sacrificed on grounds of expediency, any such encroachment on this right should be carefully circumscribed.
... .
Another major limitation on the employment of masters is the likelihood that a reference will add appreciably to the cost and length of the litigation. Litigants should not be burdened with the costs of referring matters which the judge might easily hear and determine for himself... . The unfortunate result of excessive references to masters in chancery should serve as a deterrent against the adoption of a similar course in the federal courts.
... .
Notwithstanding the above, the use of the reference procedure, when placed in proper perspective, can and does serve an invaluable adjunct to the judicial process. When properly employed, a limited reference can lighten congested calendars and provide a more expeditious means for reducing voluminous documents and testimony to a size easily digestible by the courts and for clarifying complex issues for speedy and just determination by the judge and jury. The desirability of having recourse to some reference procedure while at the same time preserving a party's right to trial by court and jury is reflected in rule 53 of the Federal Rules of Civil Procedure... .
See Irving R. Kaufman, Masters in The Federal Courts: Rule 53, 58 Col.L.Rev. 452, 453-54 (1958) (emphasis added) (citations omitted); see also Note, Masters and Magistrates in the Federal Courts, 88 Harv.L.Rev. *1281 779 (1975). The very concerns resonated by Judge Kaufman illuminate the dangers which can surface in a reference process which has few limitations.
Although the federal reference process has built-in restrictions limiting the reference process in federal courts,[11] the Florida Rule has no equivalent substantive limitation. The only actual constraint on the reference process in Florida is the requirement that a litigant consent to the referral before the Master can hear the case. Fla.R.Civ.P. 1.490(c) ("No reference shall be to a master, either general or special, without the consent of the parties"). However, in view of the practical time constraints on the court docket, and the litigant's need to resolve the matter in an expedient manner, or at least not have his or her case prolonged extensively, the right to reject a referral may not be such an attractive option for the litigant.[12] Consequently, without any true substantive safeguards, we cannot be sure that the practice of referring cases to Masters in Florida will not proliferate and become the rule, rather than the exception; if that is not already the case. It is therefore incumbent upon us to assure that proper safeguards are maintained and adhered to in order to protect the litigant's right to have his or her case decided by a constitutional, elected judicial officer.
One of these safeguards  the requirement that the Master record the evidence presented at the Master's hearing and file this record with his or her report  is built right into the text of Florida Rule of Civil Procedure 1.490(f). See Fla.R.Civ.P. 1.490(f). In fact, both Federal Rule 53(e)[13], as well as the Florida predecessors to Rule 1.490(f),[14] contain such a record-keeping provision. The purpose of requiring Masters to record the evidence and testimony presented at the hearing(s) is to preserve the record so that the trial court can review the propriety and legal validity of the Master's factual findings and legal recommendations.[15] Without such a record-keeping requirement, a trial judge could not properly evaluate a Master's findings and recommendations because the judge would have no record or other documentation of the testimony taken before the Master from which to base his or her evaluation. Keeping this record-keeping requirement and historical viewpoint in mind, we will now address the issue before us today.

III. THE ISSUE

The issue which is at the very heart of this appeal is whether a trial court may adopt and ratify a Master's report and recommendation where the Master has neglected to file a written statement of the evidence and testimony taken at the hearing(s) over which the Master presided, in some complete form, *1282 along with his or her report. For the reasons which follow, we answer this question in the negative.

IV. THE PARTIES' CONTENTIONS

On appeal, the husband contends that the trial court should not have ratified the General Master's Report and Recommendations because the Master failed to include a written statement of the evidence presented at the hearings over which the Master presided, as required by Florida Rule of Civil Procedure 1.490(f). The wife contends that the trial court properly adopted the General Master's Report and Recommendations because the husband, as the party challenging the General Master's report, carries the burden of providing the trial court with a transcript of the proceedings held before the General Master.

V. THE APPLICABLE LAW

The controversy on appeal centers around the interpretation of a provision in Florida Rule of Civil Procedure 1.490(f) which provides as follows:
Hearings... . The evidence shall be taken in writing by the master or by some other person under the master's authority in the master's presence and shall be filed with the master's report.

Fla.R.Civ.P. 1.490(f) (emphasis added). In our analysis of this provision, we start from the premise that a Master's findings of fact and conclusions of law come to the trial court clothed with a presumption of correctness, and the trial court may only reject these findings and conclusions if they are clearly erroneous or if the Master has misconceived the legal effect of the evidence presented. Mahan v. Mahan, 88 So.2d 545 (Fla. 1956); Kersh v. Kersh, 613 So.2d 585 (Fla. 4th DCA 1993); Reali v. Velocci, 563 So.2d 1106 (Fla. 5th DCA 1990), review denied, 576 So.2d 294 (Fla. 1991); Reece v. Reece, 449 So.2d 1295 (Fla. 4th DCA 1984); Landis v. Landis, 486 So.2d 28 (Fla. 3d DCA 1986); Ben-Hain, 418 So.2d at 1108; Sitomer v. Sitomer, 397 So.2d 373 (Fla. 4th DCA 1981); Hemminger v. Hemminger, 391 So.2d 254 (Fla. 4th DCA 1980), review denied, 399 So.2d 1143 (Fla. 1981). Additionally, and in complement to the aforementioned principle, is the rule that a party who attempts to challenge a Master's findings of fact or conclusions of law by filing exceptions thereto has the burden of providing the trial court with a sufficient record of the prior proceedings held before the Master, so that the trial court may rightly determine the propriety of the Master's report and the objecting parties' exceptions. Knupp v. Knupp, 625 So.2d 865 (Fla. 3d DCA 1993); Petrakis v. Petrakis, 597 So.2d 856 (Fla. 3d DCA 1992); Mestre Rental Co. v. Resources Recovery (Dade County), Inc., 568 So.2d 1344 (Fla. 3d DCA 1990); Model v. Model, 472 So.2d 867 (Fla. 3d DCA 1985); Ben-Hain, 418 So.2d at 1108; Ferris v. Ferris, 417 So.2d 1066 (Fla. 4th DCA 1982). "In the absence of such a record, the trial court is required to overrule the party's exceptions and accept the general master's report." Knupp, 625 So.2d at 866; see, e.g., Mestre Rental Co.; Model; Ben-Hain; Ferris; Sitomer.
However, as we previously made clear in Petrakis, the requirement that the excepting party must provide the trial court with a record of the proceedings held before the Master "assumes that there is a transcript, or other written record, in existence which can be obtained and provided to the Court by the party making the exceptions to the Master's report." Petrakis, 597 So.2d at 857. This assumption recognizes that, "where a cause is referred to a master, unless the parties have stipulated otherwise, the trial court has a duty to examine and consider the evidence for itself and determine whether under the law and facts the findings and recommendations of the master are justified prior to entry of a final judgment in accordance with the master's report." Ben-Hain, 418 So.2d at 1108 (emphasis added); accord Lyon v. Lyon, 54 So.2d 679, 680 (Fla. 1951); Woolfson v. Rose, 448 So.2d 1176, 1177-78 (Fla. 3d DCA 1984). As we previously stated in Bell v. Bell, 307 So.2d 911 (Fla. 3d DCA 1975):
We fully realize that ... the trial dockets are often unusually congested due to a tremendous volume of litigation. We also realize that such congestion taxes the capacity of the most devoted judges. However, *1283 we are also mindful of that there is a constitutional duty imposed on the judiciary by Art. I, § 21 of the Constitution of the State of Florida, wherein it is stated that all persons shall have access to the courts and that "... justice shall be administered without ... denial... ." Under Rule 1.490, RCP, a circuit judge may appoint masters and refer certain matters to them as a matter of procedure. However, "the judicial power ... (is) not delegable in whole or in part by the courts."
... .
Even when no exceptions are made to the master's report, entry of a final judgment in accordance with the master's findings and recommendations is not a mere formality. Rather, the court is duty bound to examine and consider the evidence for itself and to make a judicial determination as to whether under the law and the facts the court is justified in entering the judgment recommended by the master.

Bell, 307 So.2d at 914 (emphasis added) (citations omitted). This duty, which has its origins in, and is guaranteed by, the Florida Constitution,[16] reflects the axiom that the trial judge is the only elected constitutional officer with the organic right to determine a litigant's case. It is precisely in keeping with this duty, that we delineated the following in Petrakis:
Rule 1.490 mandates that the evidence be reduced to writing and filed with the Master's report to ensure that a record is created in order to protect the litigant's right to ultimate review by a judge.
... .
A record is imperative for proper review. Clearly, the Florida Supreme Court has placed the responsibility on the General Master to make sure that the evidence presented is reduced to writing and, furthermore, to have the written record of the evidence filed with the report. In the present case, the General Master violated Rule 1.490(f) by failing to make sure that a written record of the proceedings was prepared. Thus, it was error for the trial court to ratify the General Master's Report based upon the husband's failure to provide the trial court with a record of the proceedings, when no such record existed. Obviously, a litigant cannot provide the Court with a document that does not exist.

Petrakis, 597 So.2d at 857-58 (emphasis added); see also Berk v. Berk, 423 So.2d 1018, 1019 (Fla. 4th DCA 1982) ("Master's proceedings contribute greatly to the administration of justice... . Nonetheless, all judicial proceedings must be capable of review. We fail to see how the interests of justice are served by a circuit court's failure to require a record, a duty affirmatively placed upon it by our Supreme Court... .").
Since Petrakis, in an effort to safeguard the litigant's right to have his or her case heard by a constitutionally-elected officer, we have consistently reaffirmed the principle that a trial court cannot generally ratify or adopt a Master's report where the Master has failed to produce, and file with his or her report, a written record of the evidence and testimony presented before it. See Zebracki v. Zebracki, 648 So.2d 850 (Fla. 4th DCA 1995); Knupp, 625 So.2d at 867; Lopez v. Lopez, 622 So.2d 153 (Fla. 3d DCA 1993); Gordin v. Gordin Int'l, Inc., 605 So.2d 154, 155 (Fla. 4th DCA 1992). To sanction a judgment in accordance with a General Master's report, without the trial court having had the benefit of a complete record before it, would be in direct derogation of a litigant's constitutional right to have his or her case heard, and determined, by a constitutional, judicial officer.
Having determined what the Master's duties are under Florida Rule of Civil Procedure 1.490(f), we now delineate the parameters of these duties. In furtherance of removing any further confusion regarding a Master's obligations under Rule 1.490(f), we find that it is abundantly clear that the Florida Supreme Court, in promulgating Rule 1.490(f), has mandated that:
(1) The Master, not a litigant, has the obligation and responsibility either to create *1284 an accurate and complete written record of the evidence received by the Master or to ensure that some other person (such as a court reporter), acting under the authority of the Master in the Master's presence, shall create such a written record of the evidence received by the Master. The written record may consist of a narrative summary of the evidence either prepared by the Master or, as indicated above, by some other person acting in a manner consistent with the Rule. In such a case the narrative summary must specify who testified, who said what,[17] what stipulations were entered into, and what documents (or other items) were admitted into evidence or excluded. Alternatively, the record may consist of a verbatim transcript of the proceedings, such as that which would be created by a court reporter attending the hearing.
(2) The Master shall file the above-described written record of the evidence with the Master's report that is filed with the Court. The said written record to be filed by the Master with the Master's report shall be in such a form so as to be readable by the litigants and the Court. In other words, if the Master has a court reporter present during the evidentiary hearing in furtherance of creating a written record of the evidence received, as required by Rule 1.490(f), the Master will then also have the responsibility of making sure that the written record of the hearing that is filed with the Master's report is a complete and transcribed record of the evidence from the hearing held before the Master, and not merely a package containing the court reporter's notes.
(3) The foregoing obligations that the Florida Supreme Court has placed upon the Masters cannot be transferred or delegated to the litigants. In addition, neither the Court nor the Master can require a litigant to become involved in creating a written record or transcript. The refusal or failure of a litigant to so participate cannot be deemed to be a waiver of their rights under Rule 1.490(f).
Consequently, since the rule that governs the issue herein requires that the Master provide a written record of the evidence to be filed with the Master's report, the responsibility for creating and preparing such a written record cannot be shunted or transferred to the litigants involved. This prohibition against requiring the litigants to share the burden of creating and preparing the written record applies to both direct attempts to transfer the responsibility to the litigants, such as the entering of an order providing for same, as well as indirect attempts to transfer this burden, such as entering an order that provides that the failure of a litigant to secure or obtain a court reporter, or other method of creating and preparing a written record, constitutes a waiver of the litigant's rights under the rule in question.
In light of the foregoing analysis, we disapprove of, and recede from, our previous decisions, such as Ben-Hain v. Tacher, 418 So.2d 1107 (Fla. 3d DCA 1982) and its progeny[18], to the extent that they place the initial burden of creating or producing the written record of the evidence on the litigant. Accordingly, it also follows that a trial court may not adopt or ratify a Master's report if the Master has failed to file a complete record of the evidence with this report, whether exceptions have been filed to that report or not.[19]See Zebracki v. Zebracki, 648 So.2d 850, 850 (Fla. 4th DCA 1995) (reversing a trial court order which adopted a Master's report where the Master failed to file a written record of the evidence with the report); Petrakis, 597 So.2d at 857-58 (same); Serge v. Robertson, 573 So.2d 1072, 1072 (Fla. 4th *1285 DCA 1991) (same); cf. Berk, 423 So.2d at 1019 (indicating that the filing of a written record of the evidence by the Master is mandatory pursuant to Rule 1.490(f)); Kay v. Kay, 430 So.2d 532 (Fla. 4th DCA 1983) (noting that the Court in Berk stated that the master's duty to file a written record of the evidence with his or her report was mandatory). We now apply these principles to the facts of the instant appeal.

VI. THE INSTANT CASE

In the instant case, there were four hearings which led to the General Master's Report. In its order adopting the General Master's Report, the trial court found that the parties, through their attorneys, had executed a written waiver of record at the March 25, 1993 hearing, and also found that a court reporter was in attendance at the other three hearings held before the Master. Based upon this finding, and based upon the authority of Ben-Hain v. Tacher, the trial court ratified and approved the General Master's report. We reject the trial court's finding of waiver because the record, as it appears on appeal, contains no such written waiver of record executed by the parties, or by the attorneys on behalf of the parties.
The wife contends that the trial court properly ratified the General Master's report, under the authority of Ben-Hain v. Tacher, since it was the husband's duty, and not the Master's, to file a complete transcript of the proceedings with the trial court. The wife further contends that the Master complied with her duties under Rule 1.490(f), for three out of the four hearings, since a court reporter was present at these hearings. However, simply providing for a court reporter does not relieve the Master of the duty to file a written record of the evidence with his or her report. As previously noted, where the Master has elected to fulfill his or her duty to record the evidence by providing a court reporter at the hearing(s), it is the Master's duty to have the court reporter's notes transcribed, and the Master must file these transcribed notes with his or her report.
The wife also contends that the General Master fulfilled her record-keeping obligations under Rule 1.490(f) because the wife, on behalf of the Master, filed a copy of the handwritten notes taken by the General Master during the aforementioned hearings. This argument must also fail, however, because the notes, as they appear in the record, are incomplete and illegible and are therefore insufficient to constitute a record of the evidence under Rule 1.490(f). See Gordin, 605 So.2d at 155 (finding that a Master's "sketchy handwritten notations of the proceeding ... were patently insufficient to constitute a record of the evidence.") As we have made abundantly clear today, the Master must file a complete written record of the evidence with his or her report in order to comply with the mandates of Rule 1.490(f). In order to be complete, such record must sufficiently and accurately detail the evidence and testimony presented before the General Master. This requirement assures that the trial court will have an adequate record by which to review the propriety of the Master's factual findings and legal recommendations.
In light of the foregoing analysis, we hold that the trial court erred in ratifying and adopting the General Master's Report and Recommendations, and in denying the husband's exceptions thereto, because the General Master did not file a complete written record of the evidence with her report, as required by Rule 1.490(f).

VII. CONCLUSION

Accordingly, because proper procedures were not followed here, we reverse the trial court's orders adopting the Master's report and overruling the husband's exceptions and remand with instructions to the trial court to vacate the General Master's Report and Recommendations and the Final Judgment of Dissolution of Marriage entered in accordance therewith, and to hold such further proceedings as may be necessary and which are consistent herewith.
Reversed and Remanded with instructions.
SCHWARTZ, C.J., and NESBITT, BASKIN, JORGENSON, COPE, GERSTEN and GREEN, JJ., concur.
*1286 GODERICH, Judge (dissenting).
I respectfully dissent.
By its majority opinion, this court rejects and departs from a long line of cases that requires the trial court to adopt a Master's findings where a complete record of the proceedings before the Master has not been provided to the trial court by the party making exceptions to the Master's report. See Knupp v. Knupp, 625 So.2d 865 (Fla. 3d DCA 1993); Mestre Rental Co. v. Resources Recovery (Dade County), Inc., 568 So.2d 1344 (Fla. 3d DCA 1990); Model v. Model, 472 So.2d 867 (Fla. 3d DCA 1985); Ferris v. Ferris, 417 So.2d 1066 (Fla. 4th DCA 1982); Ben-Hain v. Tacher, 418 So.2d 1107 (Fla. 3d DCA 1982); Sitomer v. Sitomer, 397 So.2d 373 (Fla. 4th DCA 1981). This court now places a new interpretation on Rule 1.490(f), Florida Rules of Civil Procedure, by requiring a written record of the evidence received by the Master to be filed with the Master's report, even in situations where neither objections nor exceptions have been filed to the Master's report. Further, this court places this obligation and responsibility of producing a written record of the evidence on the Master. I believe that this cannot be the intent of the Florida Supreme Court when it promulgated Rule 1.490(f), Florida Rules of Civil Procedure.
The majority opinion also proposes two alternatives that would allow the Master to fulfill his obligation: 1) the Master may "create an accurate and complete written record of the evidence received by the Master;" or 2) a verbatim transcript of the hearing before the Master may be filed with the Master's report. See majority opinion at 1284. The majority further explains that the "accurate and complete written record" may be a "narrative summary" that specifies "who testified, who said what, what stipulations were entered into, and what documents (or other items) were admitted into evidence or excluded." See majority opinion at 1284. The majority's first alternative, the "narrative summary," is not a feasible option. In reality, a "narrative summary" can not be an "accurate and complete written record." For example, in the instant case, the wife filed a copy of the Master's handwritten notes taken during the hearing; however, the majority found that the notes were incomplete and illegible, and therefore, insufficient. Inevitably, this alternative will lead to issues as to whether the Master's written record is actually accurate and/or complete. Therefore, the majority's second option, the "verbatim transcript," is the only feasible manner in which the Master can comply with his or her obligation and responsibility of providing a written record of the evidence. Additionally, the majority's opinion fails to address another important issue  who will bear the burden and expense of the attendance of a court reporter at all hearings before a Master and the transcription of these hearings. In civil cases, it has always been the law that the litigant who seeks review has the burden of providing an adequate record that will overcome the presumption that the trial court's findings are correct. See Applegate v. Barnett Bank of Tallahassee, 377 So.2d 1150 (Fla. 1979); McNair v. Pavlakos/McNair Dev. Co., 576 So.2d 933 (Fla. 5th DCA 1991); Boylan v. Boylan, 571 So.2d 580 (Fla. 4th DCA 1990); Ahmed v. Travelers Indem. Co., 516 So.2d 40 (Fla. 3d DCA 1987). However, the majority now places this financial burden on the Master, and consequently, the county who finances the Masters. In all likelihood, this is an additional financial burden that the county may not be willing, nor able, to support in times of financial austerity. As such, the majority's opinion may mean the end of the Masters as we know them today.
For these reasons, I disagree with the majority and believe that, as in other civil cases, the burden of providing the written record of the evidence should be on the litigant who seeks review. Finally, because the majority's opinion will most likely mean the end of the Master's program, which the majority itself recognizes as well worth preserving, I think that this question should be certified to the Florida Supreme Court as one of great public importance.
HUBBART, J., concurs.
NOTES
[1] In doing so the court noted that it was relying on the holding in Ben-Hain v. Tacher, 418 So.2d 1107 (Fla. 3d DCA 1982), which held that a trial court is obligated to accept the Master's findings where there is no record in existence from which it can be shown that the Master's findings are clearly erroneous, or that the master has misconceived the legal effect of the evidence. 418 So.2d at 1107-08.
[2] Subsequent to the filing of this appeal, the trial court entered a Final Judgment of Dissolution of Marriage both ratifying and incorporating the General Master's Report.
[3] Black's Law Dictionary defines "reference" as, "The act of referring a case to a referee, auditor, or Master to find facts and submit report to the court." Black's Law Dictionary 1281 (6th ed. 1990).
[4] See Irving R. Kaufman, Masters in The Federal Courts: Rule 53, 58 Col.L.Rev. 452, 452 n. 1 (1958).
[5] The predecessor versions of Florida Rule of Civil Procedure 1.490 were former Florida Rule of Civil Procedure 3.14 and Florida Equity Rules 54 through 65. See Index, Vol. 3, at 2990-2992, Fla. Stat. (1955); Index, Vol. 2, at 2839-40, Fla. Stat. (1949).
[6] Aside from this reference to the origin of federal rule 53, the advisory notes do not offer any insight into the rationale behind the federal Masters system, or into the particular issue before us.
[7] See James S. DeGraw, Rule 53, Inherent Powers, and Institutional Reform: The Lack of Limits on Special Masters, 66 N.Y.U.L.Rev. 800, 800-01 (1991).
[8] See Kaufman, 58 Col.L.Rev. at 452 n. 4.
[9] Fed.R.Civ.P. 53(b) presently provides:

Reference. A reference to a Master shall be the exception and not the rule. In actions to be tried by a jury, a reference shall be made only when the issues are complicated; in actions to be tried without a jury, save in matters of account and of difficult computation of damages, a reference shall be made only upon a showing that some exceptional condition requires it.
Fed.R.Civ.P. 53(b) (emphasis added).
[10] See Bryant, The Office of Master in Chancery: Colonial Development, 40 A.B.A.J. 595 (1954).
[11] See Fed.R.Civ.P. 53 ("A reference to a master shall be the exception and not the rule. In actions to be tried by a jury, a reference shall be made only when the issues are complicated; in actions to be tried without a jury, save in matters of account and difficult and of difficult computation of damages, a reference shall be made only upon a showing that some exceptional conditions require it.") (emphasis added).
[12] Cf. Bathurst v. Turner, 533 So.2d 939, 941 n. 2 (Fla. 3d DCA 1988) ("We must note the potentially coercive effect of the requirement that the party who objects to the reference himself bring his objection to the attention of the referring court.... It takes little imagination to understand that a party's failure to object may not be mere  and, as we hold, insufficient  acquiescence, but forced acquiescence, at that.") (emphasis added).
[13] Federal Rule of Civil Procedure 53(e) states in pertinent part as follows: "In an action to be tried without a jury, unless otherwise directed by the court of reference, the master shall file with the report a transcript of the proceedings and of the evidence and the original exhibits." Fed. R.Civ.P. 53(e) (emphasis added).
[14] The prior versions of Florida Rule of Civil Procedure 1.490(f), former Florida Rule of Civil Procedure 3.14(f), and Florida Equity Rule 59, each contain this record-keeping requirement. Former Rule of Civil Procedure 3.14(f) provides, in pertinent part, "The evidence in all examinations shall be taken down in writing by the master or by some other person by his authority in his presence and filed with his report." See Index Vol. 3, at 2991, Fla. Stat. (1955) (emphasis added). Florida Equity Rule 59 contains the same requirement in identical language. See Index Vol. 2, at 2839, Fla. Stat. (1949).
[15] It is interesting to note that this requirement has been a historical function of Masters ever since the first use of Masters in English Chancery Courts.
[16] Art. I, §§ 9, 21-22, Fla. Const.; Art. V, §§ 5-6, Fla. Const. See also Bell, 307 So.2d at 914-15.
[17] This must be a fair and accurate summary, but need not be verbatim.
[18] Knupp, 625 So.2d at 867; Mestre Rental Co., 568 So.2d at 1345; Model, 472 So.2d at 867, n. 1.
[19] In view of our holding, we reject and depart from the line of cases which hold that a trial court is obligated to accept a Master's findings where no record exists from which the trial court can review the Master's findings to the extent that this rule is applied in circumstances where the Master has failed to file a complete record of the evidence with his or her report. See, e.g., Ben-Hain; Ferris; Sitomer; Claughton v. Claughton, 347 So.2d 437 (Fla. 3d DCA 1977).