928 So.2d 360 (2006)
Monica Maria ROBINSON, Appellant,
v.
Trevor Anthony ROBINSON, Appellee.
No. 3D04-2936.
District Court of Appeal of Florida, Third District.
January 4, 2006.
Rehearing Denied May 22, 2006.
Roland N. Cataldo, for appellant.
Karen J. Haas; and Paul R. Marcus, Miami, for appellee.
Before COPE, C.J., and LEVY and ROTHENBERG, JJ.
ROTHENBERG, Judge.
The parties, Monica Maria Robinson ("former wife") and Trevor Anthony Robinson ("former husband"), divorced in October 1995, after eighteen years of marriage *361 in which three children were born to the marriage, two of whom were still minors at the time. When the marriage was dissolved, the former husband was earning approximately $80,000 per year; whereas the former wife's annual income was approximately $22,000. Pursuant to the Final Judgment of Dissolution of Marriage ("Final Judgment"), the former husband was ordered to: (1) pay $1,000 per month in child support for the two minor children, which would be reduced to $644 when the eldest minor child turned eighteen years old; (2) pay the former wife $1,500 per month in temporary alimony until the marital residence was sold; (3) pay $1,000 per month in permanent alimony after the marital house was sold for a period of forty-eight months, and thereafter, $1,200 per month; (4) obtain a $300,000 life insurance policy to secure the payment of child support and alimony; and (5) reimburse the former wife for the cost of acquiring health insurance for the minor children through her employer.
On June 20, 2002, the former husband filed a Supplemental Petition for Modification ("Petition"), seeking to modify both child support and alimony, alleging that there had been a substantial change in circumstances since the entry of the Final Judgment in October 1995. This Petition was followed by an Amended Motion for Contempt filed by the former wife in July 2002, requesting that the former husband be held in contempt for failing to comply with the Final Judgment. In her Amended Motion for Contempt, the former wife asserted that her former husband had an alimony arrearage of $12,000, and that he had failed to reimburse her for the minor children's health insurance premiums, totaling $6,114.
In March 2003, the former husband's Petition and former wife's Amended Motion for Contempt were referred to a general master by the trial court. Following a hearing, the general master filed her report in February 2004. The general master found, in part, that: (1) the former husband's child support obligations terminated in December 2003; (2) the former husband failed to reimburse the former wife for the cost of acquiring health insurance for the minor children; (3) the former wife was unemployed, but actively seeking employment, and is in the need of financial support from the former husband; (4) the former husband is "deliberately under-employed" and currently employed by his present wife's business; (5) the former husband has a combined outstanding arrearage of $22,859 for the unpaid alimony and health insurance premiums; (6) periodic alimony should be reduced to $400 per month effective July 2002, thereby reducing the post-filing arrearage for alimony to $7,200; and (7) as a result of the termination of child support and the reduction in alimony, a life insurance policy in the amount of $100,000 was appropriate. In addition, the general master recommended: (1) that the former husband's request for a modification of child support from the filing of his Petition in June 2002 to the date of emancipation of the youngest minor child be denied; (2) that effective June 2002, alimony payments be modified to $400 per month; (3) that the former husband maintain a life insurance policy in the amount of $100,000, naming the former wife as the beneficiary; and (4) that the former husband's total arrearage for unpaid alimony and health insurance premiums was $30,059.
Thereafter, the former husband filed Exceptions to Report of General Master, asserting that the general master erred by: denying his request to retroactively modify child support to the date that he filed his Petition; denying his request to terminate alimony; and requiring the former husband to maintain a life insurance *362 policy in an amount that exceeds the arrearage or the present value of his alimony obligation until he reaches age 65.[1]
The trial court entered an Order Granting Exceptions Terminating Alimony and Reducing Child Support ("Order Granting Exceptions"), in which it found and/or ordered that: (1) the evidence presented at the hearing before the general master did not demonstrate that the former husband was "deliberately unemployed;" (2) the former husband's child support obligation should have been retroactively reduced by $238 per month for eighteen months; (3) alimony should have been terminated as of the filing of the Petition in June 2002; (4) the former husband's total arrearage should be $18,575, not $30,059, due to the termination of alimony and the retroactive downward modification of child support; (5) the former husband's obligation to maintain life insurance should be in the amount of $25,000 until the arrearage is paid; and (6) the former husband must pay to the former wife $400 per month until the arrearage is paid in full.[2]
The former wife appeals, contending that the trial court abused its discretion by rejecting both the general master's finding of fact that the former husband was "deliberately under-employed" and the general master's recommendation that alimony be reduced, not terminated. We agree.
"Where a general master has been appointed for fact-finding and to recommend disposition of pending issues, the trial court is bound by the general master's factual findings unless they are not supported by competent substantial evidence or are clearly erroneous." Garcia v. Garcia, 743 So.2d 1225, 1226 (Fla. 4th DCA 1999); see also Sonson v. Sonson, 815 So.2d 685 (Fla. 3d DCA)(holding that trial court properly ratified general master's findings of fact where findings were supported by competent, substantial evidence), review denied, 835 So.2d 269 (Fla. 2002); De Clements v. De Clements, 662 So.2d 1276 (Fla. 3d DCA 1995)(en banc)("[A] Master's findings of fact and conclusions of law come to the trial court clothed with a presumption of correctness, and the trial court may only reject these findings and conclusions if they are clearly erroneous or if the Master has misconceived the legal effect of the evidence presented."); Linn v. Linn, 523 So.2d 642, 643 (Fla. 4th DCA)("A trial court is bound by a master's factual findings and recommendations unless they are clearly unsupported by the evidence and clearly erroneous."), review denied, 534 So.2d 400 (Fla. 1988). On appeal, this court must determine whether the "trial court abused its discretion when it rejected a general master's report and recommendation." Carls v. Carls, 890 So.2d 1135, 1138 (Fla. 2d DCA 2004).
As we conclude that the general master's findings and recommendations were supported by the evidence, we conclude that the trial court abused its discretion in reweighing the evidence, and supplanting its opinion for that of the master. The trial court's Order Granting Exceptions provides: "The evidence is clear that Mr. Robinson was not deliberately unemployed; that he went into a new business; *363 it was funded with borrowed funds; the new business failed; Mr. Robinson went bankrupt; and that Mr. Robinson did not go into business to lose money." This order is confusing because the general master did not find that the former husband was "deliberately unemployed." Rather, the general master found that the former husband was "deliberately under-employed." Assuming that the language "unemployed" is a typographical error and not a mistake in the understanding of the evidence presented, as the former husband clearly was employed and the general master found that he was "under-employed," it is clear that the trial court simply reweighed the evidence and supplanted his opinion for that of the general master. As there was competent, substantial evidence in the record to support the general master's findings, we find that the trial court erred when it failed to adopt them.
What the general master heard was that in 1995, the former husband left his employment at Xerox to open his own copy machine business. Unfortunately, the former husband's business was mostly unprofitable, and in order to keep his business afloat, he chose to deplete his savings and retirement accounts and to borrow from his credit cards. Finally, in 2001, the former husband declared bankruptcy. Thereafter, instead of seeking employment with a more secure company, the former husband began to work for his present wife's company, a copy machine business that was also suffering financially. While employed by his wife's company, he was earning approximately $3,000 per month. However, oddly enough, after his child support obligations terminated, his present wife reduced his pay to approximately $2,000 per month. The record also reflects that the former husband has a Master's Degree in Business Administration and was found by the general master to be "extremely well spoken."
At the conclusion of the hearing, the general master found that the former husband should have abandoned his unsuccessful business earlier, and that he should have sought a better job. As the former husband holds a Master's Degree in Business Administration and was earning $80,000 in 1995, the general master's conclusion, that the former husband, who has elected to work in his current wife's business for $2,000 a month rather than seeking more lucrative employment, was "deliberately under-employed," is supported by competent, substantial evidence. Additionally, we also conclude that the general master's recommendation that alimony be reduced, not terminated, was supported by the evidence and not clearly erroneous, see Linn, 523 So.2d at 643, and thus, the trial court abused its discretion by terminating alimony completely. We note that the trial court's order is devoid of any finding that the former husband's current financial situation is permanent. Carls, 890 So.2d at 1137-38 ("Florida caselaw is clear that the party seeking to modify the amount of alimony awarded by a final judgment first must show that there has been a substantial, material, permanent change in circumstances which was not contemplated at the time the amount of alimony originally was set.").
Finally, based on its termination of alimony and the retroactive downward modification of child support, the trial court rejected the general master's recommendation that the former husband maintain a $100,000 life insurance policy, naming the former wife as the beneficiary, and instead ordered that the former husband maintain a $25,000 life insurance policy until the arrearage was completely satisfied. As noted earlier, the Final Judgment provided that the purpose of the life insurance policy was to secure both child support and alimony. As this court has reinstated the *364 general master's recommendation that the former husband's alimony obligation be reduced to $400 per month, not terminated, the general master's recommendation that the former husband maintain a $100,000 life insurance policy was appropriate in light of his current age and arrearages.
Accordingly, this cause is reversed for entry of an order consistent with this opinion, and remanded for a recalculation of the total arrearages owed by the former husband.
Reversed and remanded.
NOTES
[1] It is interesting to note that in his Exception to Report of General Master, the former husband did not challenge the general master's finding that the former wife was currently unemployed, even though she testified that she was employed, earning approximately $1,200 to $1,300 per month.
[2] In this appeal, the former wife does not challenge the portion of the trial court's Order Granting Exceptions in which the trial court retroactively reduced the former husband's child support obligation. We, therefore, do not address this issue.